**STATE of Minnesota, Respondent,**

v.

**Craig Kendall CAMP, Appellant.**

No. C2–97–1028.

Supreme Court of Minnesota.

March 18, 1999.

---

14. *Id.*

Lawrence W. Pry, Asst. State Public Defender, Minneapolis, for appellant.

Michael A. Hatch, Minnesota Atty. Gen., Thomas R. Ragatz, Asst. Atty. Gen., St. Paul, Alan L. Mitchell, St. Louis Co. Atty., Duluth, for respondent.

## OPINION

PAGE, J.

On October 14, 1996, appellant Craig Kendall Camp was charged by complaint with three fifth-degree controlled substance crimes: possession of methamphetamine in violation of Minn.Stat. § 152.025, subd.2(1) (1998), possession of cocaine in violation of Minn.Stat. § 152.025, subd. 2(1) (1998), and sale of marijuana in violation of Minn.Stat. § 152.025, subd. 1(1) (1998).[1]

At his omnibus hearing, Camp moved to dismiss the complaint contending that the police lacked probable cause for his arrest. He also moved to suppress all statements he made while in custody and challenged the search warrant issued for his residence for lack of probable cause. The trial court denied each of Camp's motions and a jury subsequently found him guilty of the possession of methamphetamine charge and acquitted him of the sale of marijuana charge. Camp was sentenced to an executed term of fifteen months in prison.

On appeal to the court of appeals, Camp again raised the issue of whether the police had probable cause for his arrest. The court of appeals affirmed based on its conclusion that, under the totality of the circumstances, the arresting officer had probable cause to believe that Camp had committed a crime or

---

1. The state dismissed the possession of cocaine charge pursuant to Minn. R.Crim. P. 30.01 before trial.

was engaged in criminal activity.[2] In part, the court relied on knowledge possessed by one law enforcement officer that it imputed to the arresting officer. We affirm as modified.

The facts of this case are essentially undisputed. On the morning of October 11, 1996, an anonymous caller reported to the Eveleth police that an automobile had been idling on Summit Street in Eveleth for an extended period of time and that two males appeared to be "going through" the vehicle. At about 6:42 a.m., Eveleth police Lieutenant Brian Lillis was dispatched to investigate the report.

When Lt. Lillis reached Summit Street, he observed a white Pontiac sedan parked on the south side of the street idling with its headlights on and the driver's door open. Two men were inside the Pontiac. One was in the driver's seat and the other was in the back seat. The man in the back seat was wearing only a T-shirt even though it was cold and windy outside. As Lt. Lillis drove by the vehicle, the back seat occupant disappeared from view. Lt. Lillis turned around and parked his squad car behind the Pontiac, exited the squad car, and then waited for another officer to arrive before confronting the two men. While waiting, he observed that the person in the front seat appeared to be working on the steering column and was making a "ratcheting" motion. Lt. Lillis recognized that person as Camp. Lt. Lillis recognized the person in the back as Jayson Puska, who by this time was lying down on top of and partially covered by a red plaid flannel shirt.

After the second officer arrived, Lt. Lillis, having information that Camp was a convicted felon who at times carried a handgun in his boot, asked Camp to step away from the Pontiac to be frisked. No weapon was found but Lt. Lillis did find a modified 75–watt household light bulb in a pocket of Camp's jacket. The light bulb's filament had been removed and there was a black residue on the inside. The light bulb had no particular significance to Lt. Lillis and was returned to Camp's jacket pocket. Lt. Lillis and Camp had a brief conversation about what Camp

was doing and Camp told him that he was working on the Pontiac's headlights.

Lt. Lillis returned to his squad car to run warrant checks on Camp and Puska. While he waited for the checks to be completed, he received a call on his cellular telephone from St. Louis County Sheriff's Deputy Tim Peterson. Deputy Peterson, who was working with the Boundary Waters Drug Task Force, told Lt. Lillis that he had information from an informant that Camp might be in possession of methamphetamine, and that Puska might be in possession of marijuana and methamphetamine.

When Lt. Lillis returned to the Pontiac, he noticed that Puska appeared nervous and fidgety and decided to frisk him for weapons. No weapon was found. However, a large wad of currency, later determined to be $822, was found in Puska's pants pocket. Lt. Lillis asked Puska if he could search the Pontiac and Puska answered that he could because it was not his vehicle.

Having received permission to search the Pontiac, Lt. Lillis picked up the red plaid flannel shirt, looked in its breast pocket, and found a pack of cigarettes, a cellophane wrapper that contained three paper bindles, and a brown rock-like substance wrapped in plastic. Lt. Lillis, suspecting that the shirt belonged to Puska and that the items found in the pocket were controlled substances, asked Puska who owned the shirt. Puska answered that it was not his shirt and that he did not know whose it was. At that point, both Camp and Puska were placed under arrest for suspicion of being in possession of controlled substances and transported to the police station.

After Camp was booked, his possessions were inventoried. He had in his possession a motel room key, a pack of cigarettes, and a wallet containing $379 in cash, but did not have the modified light bulb found earlier in his jacket pocket. By the time the inventory took place, Lt. Lillis had learned from Deputy Peterson that modified light bulbs like the one found in Camp's jacket pocket were often used to smoke controlled substances such as

2. *See State v. Camp*, No. C2–97–1028, 1998 WL 188547, at *4 (Minn.App. April 21, 1998).

methamphetamine and cocaine. The light bulb was subsequently found stuffed beneath the back seat of the squad car used to transport Camp to the police station. The next day, Lt. Lillis searched the cigarette pack found in the inventory of Camp's possessions. Between the inner foil wrap and the back of the cigarette box, a razor blade with what appeared to be a white powdery substance on it was found. Chemical analysis of the residue in the light bulb and the white powdery substance on the razor blade confirmed the presence of methamphetamine. Chemical analysis of the bindles and brown rock-like substance found in the red plaid flannel shirt confirmed Lt. Lillis' suspicion that they also contained methamphetamine.

■■ The only issue presented for our review is whether the trial court abused its discretion in finding that Lt. Lillis had probable cause to arrest Camp. On appeal from a trial court's finding that probable cause to arrest existed, we make "an independent review of the facts to determine the reasonableness of the police officer's actions." [3] A trial court's finding that the police had probable cause to arrest will not be set aside unless clearly erroneous.[4] Probable cause to arrest exists when "the objective facts are such that under the circumstances 'a person of ordinary care and prudence (would) entertain an honest and strong suspicion' that a crime has been committed." [5]

Camp argues that the court of appeals erred in affirming the trial court's probable cause finding because (1) Deputy Peterson's knowledge of what drug users do with modified light bulbs similar to the one found in Camp's jacket pocket at the time of his arrest does not support probable cause because

it cannot be imputed to Lt. Lillis; (2) the informant's tip supplied by Deputy Peterson does not support probable cause because it was not reliable; and (3) the methamphetamine found in the red plaid flannel shirt does not support probable cause for Camp's arrest because the shirt was not in his possession. Our independent review of all of the facts and circumstances surrounding Camp's arrest leads us to the firm conclusion that Lt. Lillis had probable cause for Camp's arrest.

■ While we agree with Camp that, under the unique circumstances of this case, the court of appeals erred when it imputed Deputy Peterson's knowledge about the uses made of modified light bulbs by drug users to Lt. Lillis and therefore Camp's possession of the modified light bulb cannot be used to support probable cause for his arrest, the remaining facts and circumstances viewed in their totality provide ample probable cause to support Camp's arrest. Those facts and circumstances are as follows:

1. Lt. Lillis was called to the scene because of an anonymous phone call reporting that two men appeared to be "going through" a vehicle that had been idling for some time.

2. When Lt. Lillis arrived at the scene, he found two men in a white Pontiac. One of those men took evasive action when Lt. Lillis approached the Pontiac.[6]

3. When Lt. Lillis asked Camp what he was doing, Camp told him that he was trying to fix the headlights, even though he had been observed making racheting motions on the steering column and the headlights were working.

4. Lt. Lillis was aware of Camp's previous felony convictions.[7]

3. *State v. Olson*, 436 N.W.2d 92, 94 (Minn.1989), aff'd, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990).

4. *See State v. Eling*, 355 N.W.2d 286, 290 (Minn. 1984) (citing *United States v. McGlynn*, 671 F.2d 1140, 1143 (8th Cir.1982)).

5. *State v. Johnson*, 314 N.W.2d 229, 230 (Minn. 1982) (quoting *State v. Carlson*, 267 N.W.2d 170, 173 (Minn.1978)).

6. *See State v. Gallagher*, 275 N.W.2d 803, 808 (Minn.1979) (holding that furtive gestures by a passenger in the defendant's vehicle may, when

combined with other observations, provide a basis for probable cause to arrest).

7. *See State v. Clifford*, 273 Minn. 249, 254, 141 N.W.2d 124, 127 (1966) (holding that knowledge of a suspect's felony record alone does not constitute probable cause for their arrest, but may be considered along with all the other circumstances). *Cf. United States v. Harris*, 403 U.S. 573, 583, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971) (holding that an officer can use their knowledge of an informant's reputation to assess the informant's reliability).

5. Lt. Lillis received information from Deputy Peterson who said he had information from an informant that Camp may be in possession of methamphetamine and that Puska may be in possession of methamphetamine and marijuana.

6. A search of the red plaid flannel shirt produced contraband suspected of being methamphetamine.

7. Puska denied ownership of both the shirt and the Pontiac.

 The anonymous report received by Lt. Lillis; Camp's racheting motions on the steering column; Camp's statements about what he was doing; Puska's evasive action; and Lt. Lillis' knowledge of Camp's felony background supported an initial belief that illegal activity may have occurred or was occurring. The tip[8] from Deputy Peterson gave Lt. Lillis information about a more specific crime and a basis for further inquiry.

That further inquiry led to the search of the shirt, which turned up suspected controlled substances. At that point, Lt. Lillis had probable cause to believe that a specific crime had occurred. Given the information Lt. Lillis received from Deputy Peterson that Camp might be in possession of methamphetamine, Puska's denial of ownership of the shirt, Camp's proximity to the shirt, and the suspicious circumstances that Camp and Puska were found in, a person of ordinary care and prudence would have an honest and strong basis to believe that criminal activity had occurred and that Camp was involved in it. Lt. Lillis had enough information to form more than a mere suspicion that Camp may have owned the red plaid flannel shirt and the suspected controlled substances found it.[9] Therefore, we conclude that the trial court's

finding that Lt. Lillis had probable cause to arrest Camp was not clearly erroneous.

Affirmed as modified.

---

8. While Camp argues that the tip cannot be used to support probable cause because both the informant and the informant's tip were unreliable, we conclude that they were reliable. The record establishes that Lt. Lillis relied on a tip from Deputy Peterson who received information from an informant whose identity and address he knew and who had provided reliable information on numerous prior occasions. *See State v. Lindquist,* 295 Minn. 398, 400, 205 N.W.2d 333, 335 (1973) (determining that an informant who is not anonymous is more likely to be telling the truth because he or she presumably knows that the

police could arrest him or her for making a false report); *State v. Wiley,* 366 N.W.2d 265, 269 (Minn.1985) (determining that the informant's reliability is enhanced by a showing history of providing accurate information).

9. *See State v. Fish,* 280 Minn. 163, 169, 159 N.W.2d 786, 790 (1968) (holding that probable cause to arrest requires something more than a mere suspicion, but something less than the evidence required to sustain a conviction).