STATE of Minnesota, Respondent,

v.

Jeffrey Richard PRAX, Appellant.

No. A03–1517.

Court of Appeals of Minnesota.

Sept. 7, 2004.

Craig E. Cascarano, Minneapolis, MN, for appellant.

Mike Hatch, Attorney General, St. Paul, MN; and Amy Klobuchar, Hennepin County Attorney, Thomas A. Weist, Assistant County Attorney, Minneapolis, MN, for respondent.

Considered and decided by WRIGHT, Presiding Judge; KALITOWSKI, Judge; and PARKER, Judge.*

## OPINION

WRIGHT, Judge.

On appeal from a conviction of attempted first-degree controlled substance crime, appellant argues that the methamphetamine seized in a search incident to arrest should have been suppressed because the law enforcement officer, who stopped appellant for erratic driving and running a red light, lacked probable cause to arrest

---

\* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to

Minn. Const. art. VI, § 10.

him for driving while impaired. Appellant also contends that the district court erred in denying his motion to withdraw a *Lothenbach* stipulation. We affirm.

## FACTS

On May 17, 2002, at approximately 1:00 a.m., Trooper Christopher Erickson observed a brown Corvette driven by appellant Jeffery Prax drift over the lane dividers and weave within its lane. Erickson activated the squad car's video camera and followed Prax for a short distance. After observing Prax stop at a red light, proceed through the light while still red, and turn left, Erickson initiated a traffic stop.

Erickson questioned Prax about the illegal turn. Prax explained that he turned left despite the stoplight because he believed that he was turning onto a one-way street. During the conversation, Erickson observed that Prax's eyes were watery and glassy. Prax was fidgety and appeared to be anxious. Erickson also noticed that Prax was sweating and his pupils appeared dilated. Based on his observations as to Prax's condition and driving conduct, Erickson conducted field sobriety tests to determine whether Prax was impaired.

Prax was given a preliminary breath test, which registered 0.00 alcohol concentration. Prax also passed the horizontal-gaze-nystagmus test and the vertical-nystagmus test. In addition, he recited the alphabet correctly. But Prax failed an eye-convergence test when his eyes reacted slowly to light. He also displayed an elevated pulse, along with eyelid and body tremors. His sense of time also was impaired. When asked to close his eyes and touch the tip, not the pad, of his finger to the center of his nose, Prax touched the pad to his nose on some attempts and the tip on others. And on some attempts, he missed the center of his nose. Finally, when asked to count backward from 95 to 70, Prax stopped at 80 to inquire how far he was supposed to count. Based on his training[1] and his observations of Prax's demeanor, driving conduct, physical condition, and performance during the sobriety tests, Erickson arrested Prax for driving while impaired (DWI).

Following the arrest, Prax was transported to the Richfield Police Department, where a full search was conducted with the assistance of another officer. The officers discovered a package of methamphetamine in his crotch area and a second package of methamphetamine in his pant leg. The packages totaled 55.4 grams of methamphetamine. The officers also discovered $1,087 in Prax's possession. Prax was subsequently charged with first-degree possession of a controlled substance.

Prax moved to suppress the seized evidence, arguing that Erickson lacked reasonable articuable suspicion to support the stop and lacked probable cause to believe Prax was under the influence of alcohol or a controlled substance. Following a hearing, the district court denied Prax's motion to suppress, holding that the stop was constitutional. The district court also concluded that, based on Prax's driving conduct, his physical appearance, and his performance during the field sobriety tests, there was probable cause to arrest Prax for DWI.

On April 29, 2003, Prax agreed to a stipulated-facts trial pursuant to *State v. Lothenbach,* 296 N.W.2d 854 (Minn.1980). Under the terms of the agreement, the state would reduce the charge to attempted first-degree controlled substance offense. And if found guilty, Prax would be

---

1. Erickson has completed Drug Evaluation Instructor School and is an assistant instructor for law enforcement classes on field sobriety evaluations. Police agencies often secure Erickson's assistance when they stop drivers who are apparently intoxicated but do not test positive for alcohol.

sentenced to 55 months' imprisonment, a downward durational departure.[2] Prax accepted the offer. On June 18, 2003, the district court found Prax guilty of attempted first-degree controlled substance crime.

Prax failed to appear for sentencing. He surrendered to Hennepin County law enforcement authorities five weeks later. Prax then moved to withdraw his *Lothenbach* stipulation. In the alternative, Prax sought release pending appeal with an agreement to receive the presumptive sentence of 134 months' imprisonment. At a hearing on the motions, Prax testified that he agreed to the *Lothenbach* procedure because he believed that he would have a choice, if found guilty, of immediate commitment to the commissioner of corrections for 55 months or a sentence of 134 months with a release pending appeal. Finding that Prax was properly advised of his rights and, with the assistance of counsel, knowingly and voluntarily waived them and agreed to the *Lothenbach* proceeding, the district court denied the motions and sentenced Prax to 55 months' imprisonment. This appeal followed.

## ISSUES

I. Did the district court err in determining that the officer's decision to arrest appellant was supported by probable cause?

II. Did the district court abuse its discretion by denying appellant's motion to withdraw the waiver of constitutional rights and consent to a trial on stipulated facts pursuant to the *Lothenbach* procedure?

## ANALYSIS

### I.

 On appeal from a district courts finding that a police officer had probable

cause to arrest, we make "an independent review of the facts to determine the reasonableness of the police officers actions." *State v. Olson*, 436 N.W.2d 92, 94 (Minn. 1989), *affd*, 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). Absent clear error, the district courts finding that the officer had probable cause to arrest will not be disturbed. *State v. Camp*, 590 N.W.2d 115, 118 (Minn.1999).

 Probable cause to arrest exists when, under the totality of facts and circumstances, "a person of ordinary care and prudence would entertain an honest and strong suspicion that a crime has been committed." *State v. Wynne*, 552 N.W.2d 218, 221 (Minn.1996) (quoting *State v. Carlson*, 267 N.W.2d 170, 173 (Minn.1978)) (quotation marks omitted). Probable cause, therefore, requires something more than mere suspicion but something less than the evidence necessary for conviction. *Camp*, 590 N.W.2d at 119 n. 9. On review, an officers determination of probable cause is afforded great deference. *State v. Olson*, 342 N.W.2d 638, 640–41 (Minn.App. 1984).

 Prax does not challenge the initial stop of the motor vehicle. Rather, he contends that there were insufficient indicia of intoxication to warrant an arrest for DWI. Prax asserts that his "poor" driving conduct was minimal at best and that he passed virtually every sobriety test administered. Although Prax concedes that he did not "totally" pass one or two of the tests, he argues that, based on his overall performance, law enforcement lacked probable cause to arrest him for DWI.

Based on our review of the record, we disagree. Erickson observed Prax drift

---

2. Because of his prior convictions of second-degree murder, aggravated robbery, and burglary, Prax's presumptive sentence for the

charged offense was 134 months' imprisonment.

over the lane dividers and weave within his lane. Erickson also observed Prax make an illegal left turn at a stoplight. Prax performed well on many of the field sobriety tests. But he also exhibited indicia of intoxication, including sweating, dilated pupils, and anxious, fidgety behavior. Prax also displayed eyelid and body tremors, had an elevated pulse, and swayed during one of the tests. At the suppression hearing, Erickson testified that Prax's performance during the field sobriety tests was consistent with that of an individual under the influence of marijuana or a stimulant. The record reflects that Erickson is well trained in detecting impairment by a controlled substance. He instructs law enforcement classes on field sobriety evaluations and serves as a resource for law enforcement agencies when a driver appears intoxicated but does not test positive for alcohol.

Accordingly, in light of Erickson's expertise in detecting impairment by controlled substances, we conclude that the observed driving conduct, physical indicia, and results of the field sobriety tests designed to identify impairment by stimulants supplied the officer with probable cause to believe that Prax was driving while impaired by a controlled substance.

## II.

Prax next argues that, because there was a misunderstanding as to the terms of the agreement to submit the case pursuant to the *Lothenbach* procedure, the district court erred by denying his motion to withdraw his consent to a stipulated-facts trial.

■ We review a postconviction court's decision to deny relief for an abuse of discretion. *Dukes v. State*, 621 N.W.2d 246, 251 (Minn.2001). Determining the nature of the parties' plea agreement is a factual inquiry for the postconviction court to resolve. *See Kochevar v. State*, 281

N.W.2d 680, 687 (Minn.1979). But interpretation and enforcement of such agreements involve issues of law, which we review de novo. *State v. Brown*, 606 N.W.2d 670, 674 (Minn.2000).

■ A criminal defendant does not have an absolute right to withdraw a guilty plea once entered. *Alanis v. State*, 583 N.W.2d 573, 577 (Minn.1998). But a criminal defendant may withdraw a guilty plea, even after sentencing, if the defendant shows that "withdrawal of the plea is necessary to correct a manifest injustice." *State v. Ecker*, 524 N.W.2d 712, 715–716 (Minn.1994) (quoting Minn. R.Crim. P. 15.05, subd. 1). "A manifest injustice occurs when a guilty plea is not accurate, voluntary, and intelligent." *Alanis*, 583 N.W.2d at 577.

■ A *Lothenbach* proceeding, however, does not involve a guilty plea. *State v. Verschelde*, 595 N.W.2d 192, 194–95 (Minn. 1999). Rather, the "*Lothenbach* procedure calls for the defendant to enter a plea of not guilty, waive his right to a jury trial, and then stipulate to the prosecution's case." *Id.* at 195 (quoting *Lothenbach*, 296 N.W.2d at 857). But like a guilty plea, a *Lothenbach* submission constitutes a waiver of constitutional rights, and such waiver must be made knowingly and voluntarily. To withdraw from the agreement to utilize the *Lothenbach* procedure, the defendant must establish that the agreement was not made knowingly and voluntarily. *Compare id., with State v. Ross*, 472 N.W.2d 651, 653 (Minn.1991) (stating that a defendant's waiver of his constitutional right to a trial by jury must be made knowingly and voluntarily).

■ Here, Prax testified at the postconviction proceeding that he believed that, at his sentencing, he would have an option of 55 months imprisonment and immediate surrender to the commissioner of

corrections or 134 months imprisonment stayed pending appeal. Praxs trial counsel also testified that Prax may have been confused as to his available options based on his counsels explanation of conversations held with the district court. Based on the testimony at the postconviction proceeding regarding Praxs understanding of the "plea agreement," Prax argues that he is entitled to relief because the "plea agreement" was unfulfilled.

Praxs argument is unavailing. Despite Praxs testimony to the contrary, the record reflects that Praxs agreement to submit the case pursuant to the *Lothenbach* procedure was knowing and voluntary. At the hearing, the prosecutor stated, "[I]f [Prax] is found guilty, he would have been sentenced to 55 months at the Commissioner of Corrections, and we will come back in approximately four weeks for sentencing." Shortly thereafter, the following exchange between Prax, his trial counsel, and the district court occurred:

> [THE COURT:] Has anyone, including me, promised you anything in exchange for your waiver of these trial rights? Other than those things that have been spoken about in the courtroom today?
>
> [DEFENSE COUNSEL:] Other than the sentence consideration, are you freely—and no promises have been made; is that right?
>
> [PRAX:] That is correct.
>
> [DEFENSE COUNSEL:] Do you have any questions of me or the court at this time?
>
> [PRAX:] No.

The record is silent as to an agreement to give Prax the sentence option of 134 months imprisonment, stayed pending appeal.

In addition, the record reflects that the state vehemently opposed any agreement that would have enabled Prax to remain free on bond pending appeal. Although Prax now contends that he misunderstood the terms of the agreement, the facts establish that Praxs waiver of rights was knowing, voluntary, and not the product of confusion as to any option for release pending appeal.

## DECISION

The officers decision to arrest appellant for driving while impaired was supported by probable cause. And the district court did not abuse its discretion in denying Praxs motion to withdraw the waiver of rights and consent to a trial on stipulated facts pursuant to the *Lothenbach* procedure.

**Affirmed.**