*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0496**

State of Minnesota,
Respondent,

vs.

Troy Kenneth Scheffler,
Appellant

**Filed March 30, 2015
Affirmed
Worke, Judge**

Anoka County District Court
File No. 02-CR-11-1294

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Joseph Murphy, Patrick Sweeney, Sweeney, Murphy & Sweeney, St. Paul, Minnesota (for respondent)

Troy Kenneth Scheffler, Coon Rapids, Minnesota (pro se appellant)

Considered and decided by Peterson, Presiding Judge; Worke, Judge; and Connolly, Judge.

**U N P U B L I S H E D   O P I N I O N**

**WORKE**, Judge

Appellant challenges his driving-while-impaired (DWI) conviction, arguing that (1) the officer did not have reasonable suspicion to stop him, (2) the officer did not have probable cause to arrest him, (3) he did not consent to a urine test, (4) he was denied due

process, and (5) he had standing to pursue a claim under the Americans with Disabilities Act. We affirm.

## FACTS

On December 13, 2010, Officer Daniel Rice was summoned to a fast-food restaurant because an individual was demanding to order food and would not leave. Officer Rice made contact with appellant Troy Kenneth Scheffler. Office Rice suspected that Scheffler had been drinking due to the odor of alcohol. Officer Rice informed Scheffler of why he was summoned, and Scheffler responded that he would walk home. Scheffler departed.

Officer Rice exited the restaurant and noted two vehicles in the parking lot. He ran the vehicle information and discovered that one was registered to Scheffler and that Scheffler's driver's license had a "no alcohol" restriction. Officer Rice observed a dog inside Scheffler's vehicle. Believing it unlikely that the dog would be left for the rest of the night, the officer parked a short distance away. After 15 to 20 minutes, a van dropped off an individual who entered Scheffler's vehicle.

The vehicle pulled out of the parking lot and then approached a stoplight-controlled intersection without signaling. After reaching the intersection and stopping, the vehicle activated a right turn signal. Officer Rice stopped the vehicle after it made the turn and recognized Scheffler. Office Rice observed that Scheffler had bloodshot and watery eyes, slurred speech, and the odor of alcohol.

Scheffler submitted to field sobriety tests. Scheffler informed Officer Rice that he had a screw in his left eye that might interfere with his ability to track an object during

2

the horizontal gaze nystagmus test. Officer Rice noted that Scheffler had difficulty tracking with both his left and right eyes. Prior to the additional tests, Officer Rice asked Scheffler if he would have any difficulty performing the tests. Scheffler responded that there was no reason why he would not be able to perform the tests, but nonetheless failed each test.

Officer Rice placed Scheffler under arrest and read the implied-consent advisory. Scheffler stated that he understood and wanted to speak to an attorney. Officer Rice transported Scheffler to a nearby hospital where a room is set up for DWI cases. After speaking to an attorney for about 15 minutes, Scheffler told Officer Rice that he could not decide whether to take an alcohol test because he felt that his toes were frostbitten. Scheffler received medical care for about 30 minutes, and Officer Rice asked again if Scheffler would consent to a blood test. Scheffler said he would take a breath test, but Officer Rice offered either a blood or urine test. Scheffler again asked to speak to an attorney, and did so for about nine minutes. Scheffler then agreed to a urine test that revealed an alcohol concentration of .18.

Scheffler was charged with violation of a restricted driver's license, fourth-degree DWI, and fourth-degree DWI (alcohol concentration of .08 or more). Scheffler moved to dismiss the charges and to suppress evidence, arguing that Officer Rice lacked reasonable suspicion to stop his vehicle; that no probable cause supported his arrest; that evidence against him was destroyed; that a warrant was required for his urine test; and that Minn. Stat. § 171.09 (2010), which placed a restriction on Scheffler's driver's license, was in conflict with the Americans with Disabilities Act. The district court issued an order

3

denying Scheffler's motions. Scheffler subsequently agreed to a stipulated-facts proceeding pursuant to Minn. R. Crim. P. 26.01, subd. 4, pleading guilty to fourth-degree DWI (alcohol concentration of .08 or more). The other two charges were dismissed.

## D E C I S I O N

### *Reasonable suspicion*

Scheffler first argues that Officer Rice did not have reasonable suspicion to stop him. Following a stipulated-facts proceeding in the district court, this court reviews de novo whether the stipulated facts support a conclusion of reasonable suspicion on the part of the officer. *State v. Lemert*, 843 N.W.2d 227, 231 (Minn. 2014).

A police officer may temporarily detain a suspect when the detention was supported by reasonable, articulable suspicion of criminal activity and the actions of the police were reasonably related to and justified by the circumstances giving rise to the stop. *State v. Diede*, 795 N.W.2d 836, 842 (Minn. 2011). Reasonable suspicion depends on specific, articulable facts that provide an objective basis for suspecting the seized person of criminal activity. *Id.* at 842-43. "[I]f an officer observes a violation of a traffic law, however insignificant, the officer has an objective basis for stopping the vehicle." *State v. George*, 557 N.W.2d 575, 578 (Minn. 1997).

Based upon this record, Officer Rice had reasonable suspicion to stop Scheffler's vehicle. First, he observed a traffic violation, failure to properly signal a turn. Scheffler asserts that he was on a private road and thus not required to signal, but the record indicates otherwise. The portion of the street in question is a public road, controlled by a

4

traffic semaphore on one end and a stop sign on the other. It provides access to businesses and several parking lots.

Second, Officer Rice had specific, articulable, objective facts to support an inference of possible criminal activity. He spoke to Scheffler inside the restaurant, where he detected the odor of alcohol. One of the vehicles in the parking lot was registered to Scheffler and had a dog inside it in December. Scheffler had a "no alcohol" restriction on his driver's license. These facts would lead a reasonable officer to conclude that Scheffler might return and drive the vehicle while influenced by alcohol. Officer Rice then observed an individual enter the vehicle and drive off. "When an officer observes a vehicle being driven, it is rational for him or her to infer that the owner of the vehicle is the current operator." *State v. Pike*, 551 N.W.2d 919, 922 (Minn. 1996).

### Probable cause

Scheffler next argues that Office Rice did not have probable cause to arrest him. Whether probable cause for an arrest existed is a question of law, reviewed de novo; the district court's findings of fact are reviewed under the clearly erroneous standard. *State v. Horner*, 617 N.W.2d 789, 795 (Minn. 2000). The reasonableness of an officer's actions is an objective inquiry in light of the training and experience of the officer. *State v. Koppi*, 798 N.W.2d 358, 363 (Minn. App. 2011).

Scheffler's arrest was supported by probable cause. Upon contact with Scheffler after stopping his vehicle, Officer Rice noted the odor of alcohol, slurred speech, and bloodshot and watery eyes. Scheffler then failed every field sobriety test given him. *See State v. Prax*, 686 N.W.2d 45, 48-49 (Minn. App. 2004) (stating that failing only some

5

field sobriety tests, while passing others, still constitutes probable cause when supported by other indicia), *review denied* (Minn. Dec. 14, 2004). His brief contains no legal authority; it is rather a list of attempted alternative explanations as to why he failed each test.

Scheffler focuses on a screw in his left eye that would have made the horizontal gaze nystagmus test difficult, but fails to explain why he could not correctly track with his right eye. Scheffler was diagnosed with frostbite that night. However, Officer Rice recalled a conversation with Scheffler's treating doctor in which the doctor indicated that only minor pain medications were needed if Scheffler would "like" them, no long-term effects were anticipated, and that the issue overall seemed minor. This supports the district court's finding that nothing (aside from intoxication) would have affected Scheffler's ability to keep his balance during field sobriety testing.

Scheffler's failure of the field sobriety tests coupled with Officer Rice's observations constitute probable cause.

### Consent

Scheffler argues that he did not consent to the warrantless urine test. Warrantless searches are per se unreasonable, subject to limited exceptions. *State v. Othoudt*, 482 N.W.2d 218, 222 (Minn. 1992). The state bears the burden of establishing the existence of an exception. *State v. Ture*, 632 N.W.2d 621, 627 (Minn. 2001). One exception is consent. *State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013), *cert. denied*, 134 S. Ct. 1799 (2014).

> For a search to fall under the consent exception, the [s]tate must show by a preponderance of the evidence that the defendant freely and voluntarily consented. Whether consent is voluntary is determined by examining the totality of the circumstances. Consent to search may be implied by action, rather than words. And consent can be voluntary even if the circumstances of the encounter are uncomfortable for the person being questioned. An individual does not consent, however, simply by acquiescing to a claim of lawful authority.

*Id.* at 568-69 (quotation and citations omitted). We review the district court's finding of voluntariness under the clearly erroneous standard. *Diede*, 795 N.W.2d at 846.

Whether consent was voluntary is determined by evaluating "the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Brooks*, 838 N.W.2d at 569 (quotation omitted). The nature of the encounter considers what led the officer to suspect the driver of DWI, the officer's request that the driver submit to a test, including whether the driver was read the implied-consent advisory, and whether the driver had the opportunity to consult with an attorney. *Id.* Because the language of the implied-consent advisory makes clear that a person has a choice of whether to submit to testing, "the fact that someone submits to the search after being told that he . . . can say no . . . supports a finding of voluntariness." *Id.* at 572.

The record supports the district court's conclusion that Scheffler voluntarily consented. He was read the implied-consent advisory and indicated that he understood it. He consulted with an attorney for about 15 minutes. After Scheffler was told that his options were a blood or urine test, he again spoke with an attorney for about nine minutes. He then consented to a urine test. The district court found that, far from being

7

coercive in any way, "Officer Rice was extraordinarily patient" with Scheffler. Nothing in the record suggests that Scheffler's will was overborne. As with many who face a choice under the implied-consent law, Scheffler faced an "uncomfortable" decision, *Brooks*, 838 N.W.2d. at 569, but it was his choice to submit to the urine test rather than refuse. Additionally, just as Brooks had past experience with law enforcement, which may have contributed to the "kind of person" he is with regard to consent, *id.* at 566 n.1, Scheffler has a long history with law enforcement, including three past experiences with the implied-consent law, and in one of those past experiences he apparently refused.

***Due process***

Scheffler next argues that his due-process rights were violated by the destruction of his urine sample. Whether a due-process violation has occurred is a question of law, reviewed de novo. *State v. Bobo*, 770 N.W.2d 129, 139 (Minn. 2009).

In determining whether the destruction of evidence constitutes a due-process violation, we first decide if the destroyed evidence had "apparent and material exculpatory value." *State v. Hawkinson*, 829 N.W.2d 367, 372 (Minn. 2013). Evidence is not exculpatory if "no more can be said than that the evidence could have been subjected to tests, the results of which might have exonerated the defendant." *Id.* (quotation omitted). If destroyed evidence does not have apparent and material exculpatory value, then it must also be shown that the state did not act in bad faith when destroying the evidence. *Id.* at 373. Bad faith requires (1) an intentional act and (2) indicia that the state destroyed the evidence to avoid discovery of evidence beneficial to the defendant. *Id.* Failure to follow standard procedures indicates bad faith. *Id.*

8

Scheffler's urine sample was tested and found to be inculpatory. The sample had no apparent exculpatory value. Scheffler was provided a copy of the report which stated explicitly that the "evidence will be destroyed by the laboratory twelve months following the date of this report." The sample was then destroyed according to the lab's standard procedures. Nothing in the record suggests that the sample was destroyed in bad faith.

*Standing*

Scheffler argues that the district court erred in concluding that he had no standing to bring his argument that Minn. Stat. § 171.09 (2010) is in conflict with the Americans with Disabilities Act.

This issue is moot. The charge against Scheffler based on section 171.09, violation of a restricted driver's license, was dismissed. There is no longer any case or controversy with regard to the charge, so this court has no jurisdiction over the claim. *See In re Guardianship of Tschumy*, 853 N.W.2d 728, 756 (Minn. 2014) (Stras, J., dissenting) (noting that in circumstances "in which there is no case or controversy, it is our duty under the Minnesota Constitution to dismiss the appeal").

*Additional claims*

Scheffler's brief contains additional claims that were not presented to the district court and/or are unsupported in the record. "An assignment of error based on 'mere assertion,' not supported by argument or authority and not raised in the district court, cannot be considered on appeal." *State v. Wilson*, 594 N.W.2d 268, 271 (Minn. App. 1999), *review denied* (Minn. Aug. 18, 1999).

**Affirmed.**