*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1986**

State of Minnesota,
Respondent,

vs.

Jesse Lee Weseman,
Appellant.

**Filed August 17, 2015
Affirmed
Smith, Judge**

Renville County District Court
File No. 65-CR-13-344

Lori Swanson, Attorney General, St. Paul, Minnesota; and

David Torgelson, Renville County Attorney; and

Scott A. Hersey, Special Assistant County Attorney, St. Paul, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Jessica Merz Godes, Assistant Public Defender, Adam Chandler (certified student attorney), St. Paul, Minnesota (for appellant)

        Considered and decided by Peterson, Presiding Judge; Stauber, Judge; and Smith, Judge.

UNPUBLISHED OPINION

**SMITH**, Judge

We affirm appellant's controlled-substance-possession and driving-while-impaired convictions because reasonable, articulable suspicion supported the police officer's expansion of the traffic stop of appellant and probable cause supported the arrest of appellant.

## FACTS

During the late morning of July 26, 2013, a sheriff's deputy observed a moving vehicle with window tint that was darker than allowed by state law. During the period that he observed the vehicle in motion, the deputy did not notice any driving conduct that indicated impairment.

The deputy stopped the vehicle and identified appellant Jesse Weseman as the driver. Weseman provided proof of insurance, but he did not have his driver's license with him. During the conversation, the deputy noticed that Weseman's "hand had . . . a tremor to it" and that Weseman's "eyes appeared more dilated than normal during daylight hours." He asked Weseman to step out of the vehicle to "further [the deputy's] indications and his suspicion."

Suspecting that Weseman was impaired, the deputy administered a series of four field sobriety tests, observing indicia of impairment on three of the tests. The deputy arrested Weseman.

During a search of Weseman's vehicle incident to arrest, the deputy discovered "a clear pipe which appeared to have the residue of methamphetamine on the inside of it."

Another deputy arrived with a dog trained to detect the presence of drugs, and the dog indicated that drugs were present in the vehicle. The vehicle was taken to the sheriff's office. After obtaining a warrant to search the vehicle, deputies discovered methamphetamine in the trunk.

A preliminary breath test conducted at the law-enforcement center indicated that Weseman was not under the influence of alcohol. After being read an implied-consent advisory instructing him that refusal to consent to a blood test was a crime, Weseman consented to a blood test. The blood test revealed the presence of amphetamine and methamphetamine. After receiving a *Miranda* warning, Weseman admitted that "he had smoked methamphetamine within the previous night."

The state charged Weseman with first-degree controlled-substance possession and second-degree driving-while-impaired. Weseman and the state agreed to a stipulated-facts trial under Minn. R. Crim. P. 26.01, subd. 4, preserving for appeal his challenges to the district court's denial of his pretrial motion to suppress the evidence against him. The district court found Weseman guilty of both charges.

### DECISION

### I.

Weseman challenges the district court's denial of his pretrial suppression motion, arguing that the deputy lacked reasonable suspicion to expand the scope of the traffic stop by directing him to exit his vehicle and perform field sobriety tests. We review de novo a district court's determination of whether reasonable suspicion existed to expand a traffic stop. *State v. Diede*, 795 N.W.2d 836, 843 (Minn. 2011).

Weseman concedes that the deputy had sufficient grounds to conduct the initial stop, but he argues that the deputy's direction that Weseman perform field sobriety tests impermissibly expanded the scope of the stop. When a law-enforcement officer conducts a traffic stop to investigate an offense, the scope of the stop "must be strictly tied to and justified by the circumstances that rendered the initiation of the investigation permissible." *State v. Wiegand*, 645 N.W.2d 125, 135 (Minn. 2002). Investigation of any other offense "must be justified by reasonable articulable suspicion of other criminal activity." *State v. Fort*, 660 N.W.2d 415, 419 (Minn. 2003). Although "[t]he reasonable suspicion standard is not high[,] . . . [a] hunch, without additional objectively articulable facts, cannot provide the basis for an investigatory stop." *Diede*, 795 N.W.2d at 843 (quotations omitted). To determine if a law-enforcement officer had a reasonable, articulable suspicion to support the expansion of a traffic stop, we consider the totality of circumstances, "includ[ing] the officer's general knowledge and experience, the officer's personal observations, information the officer has received from other sources, the nature of the offense suspected, the time, the location, and anything else that is relevant." *Appelgate v. Comm'r of Pub. Safety*, 402 N.W.2d 106, 108 (Minn. 1987).

Weseman contends that the indicia that the deputy observed before expanding the scope of the traffic stop—his dilated eyes, rapid speech, and hand tremor—were insufficient to support a reasonable suspicion of impairment. "We have been reluctant to rely on nervous behavior as evidence to support a reasonable, articulable suspicion of criminal activity." *State v. Burbach*, 706 N.W.2d 484, 490 (Minn. 2005). But, even discounting Weseman's indicia of nervousness—his hand tremor and rapid speech—the

deputy observed that Weseman's eyes were dilated in a manner unusual for daytime. "[E]ven a single objective indication of intoxication may be sufficient [to constitute probable cause], depending on the circumstances in each case." *Martin v. Comm'r of Pub. Safety*, 353 N.W.2d 202, 204 (Minn. App. 1984). And "police officers articulating a reasonable suspicion may make inferences and deductions that might well elude an untrained person." *State v. Flowers*, 734 N.W.2d 239, 251-52 (Minn. 2007). Weseman does not argue that dilated eyes are not an objective indicator of possible impairment. Thus, Weseman's dilated eyes provided sufficient grounds for the officer to investigate potential drug impairment.

Weseman contends, however, that the particular deputy that stopped him could not legitimately draw the inference of potential drug use because the deputy had not received "specialized training in the recognition of controlled substance impairment." But the deputy testified that he had received in-house training on controlled-substance impairment and, as an emergency medical technician, he had been trained on "some of the signs and symptoms that we see on the body itself in regards to impairment." Such training justifies our deference to the deputy's on-the-scene observations of potential impairment. *See id.* Weseman also cites no authority requiring that a law-enforcement officer receive more training than the deputy received before he can rely on observations of dilated eyes to suspect impairment, so we conclude that the district court did not err by ruling that the deputy had reasonable suspicion to support expansion of the traffic stop. *See State v. Wembley*, 712 N.W.2d 783, 795 (Minn. App. 2006) ("An assignment of error in a brief based on a 'mere assertion' and not supported by argument or authority is

waived unless prejudicial error is obvious on mere inspection."), *aff'd*, 728 N.W.2d 243 (Minn. 2007).

**II.**

Weseman argues that, even if the expansion of the traffic stop was supported by reasonable suspicion, the arrest was not supported by probable cause and that the district court should have suppressed all evidence obtained as a result of the arrest. "On appeal from a district court[']s finding that a police officer had probable cause to arrest, we make 'an independent review of the facts to determine the reasonableness of the police officer[']s actions.'" *State v. Prax*, 686 N.W.2d 45, 48 (Minn. App. 2004) (quoting *State v. Olson*, 436 N.W.2d 92, 94 (Minn. 1989), *aff'd*, 495 U.S. 91 (1990)). The district court's probable-cause finding will not be reversed unless clearly erroneous. *Id.*

"Probable cause to arrest exists when, under the totality of facts and circumstances, 'a person of ordinary care and prudence would entertain an honest and strong suspicion that a crime has been committed.'" *Id.* (quoting *State v. Wynne*, 552 N.W.2d 218, 221 (Minn. 1996)). Probable cause is "something more than mere suspicion but something less than the evidence necessary for conviction." *Id.* We accord "great deference" to a police officer's determination that probable cause exists to support an arrest. *Id.*

Weseman contends that the deputy lacked probable cause to arrest because Weseman passed one field sobriety test, exhibited only the "minimum number of indicators needed to 'indicate impairment'" on two others, and displayed indicia of impairment on a fourth test that was "not a standardized test." Weseman cites no

6

authority, however, requiring that a law-enforcement officer observe more than a "minimum number" of indicia of impairment or that an officer only use tests that are "standardized." To the contrary, the fact that a driver passes some field sobriety tests does not preclude an arrest based on the driver's failure of other such tests. *See, e.g.*, *id.* at 49 (upholding an arrest based on "indicia of intoxication" notwithstanding the fact that the driver "performed well on many of the field sobriety tests"). We therefore conclude that the deputy's arrest of Weseman was supported by probable cause and that the district court did not err by denying Weseman's suppression motion.

**Affirmed.**