MICHAEL PATRICK McLAUGHLIN v. STATE.

190 N. W. (2d) 867.

October 8, 1971—No. 42512.

*C. Paul Jones,* State Public Defender, and *Roberta K. Levy* and *Doris O. Huspeni,* Assistant State Public Defenders, for appellant.

*Warren Spannaus,* Attorney General, *James M. Kelley,* Assistant Attorney General, *William B. Randall,* County Attorney, and *Steven C. DeCoster,* Assistant County Attorney, for respondent.

Heard before Nelson, Murphy, Peterson, Kelly, and Odden, JJ.

KELLY, JUSTICE.

This is an appeal by a state prisoner from the district court's denial of postconviction relief. Appellant attacks the validity of his arrest and search and the voluntariness of his confession and guilty plea. He further contends that the indeterminate sentence not to exceed 20 years is cruel and unusual punishment for uttering a forged drug prescription. We affirm.

During November 1964, Lieutenant Ernest Williams of the St. Paul Police Department was in charge of investigating a series of forged drug prescriptions. With the aid of a police photograph, one or more druggists had identified appellant as the alleged forger. In addition, the license plate number of the suspected forger was registered to appellant or a member of appellant's household, and it was found that his residence was at a Hopkins address. Lieutenant Williams requested Hopkins authorities to arrest appellant but did not procure an arrest warrant. Pursuant to that request, Officer Firmis Opitz of the Hopkins Police Department began to stake out appellant's home on November 30, 1964. Shortly after 9 p. m., Opitz observed a car

matching the description of the vehicle used by the suspected forger and followed it, shining a red light on the pursued car.

The car speeded up, and Opitz gave chase. The car then crashed into a parked car, whereupon appellant jumped out and was standing next to the car at the time of his arrest. A search of the area revealed two plastic containers of morphine tablets, some syringes, and some prescription pads, one of the containers of morphine tablets being found on the ground next to appellant's left foot.

A few hours later, appellant was taken to St. Paul and charged with violating Minn. St. 1969, § 618.18, relating to the forgery of drug prescriptions. At the time of appellant's arrest, the maximum penalty for such violations was 20 years in a state penal institution. Section 618.18 has since been repealed and, in a different form, reenacted with a maximum penalty of 4 years' imprisonment, a fine of $30,000, or both. L. 1971, c. 937, § 17, subd. 3.

After being taken to St. Paul, appellant was questioned by St. Paul police officers. At that time he was a drug addict, taking intravenously at least one-half grain of morphine seven or eight times a day. By 2 or 3 a. m., December 1, 1964, he began suffering withdrawal symptoms. At 4:33 a. m., he made an unsigned exculpatory statement and demanded an attorney. At 2:45 p. m. of the same day, appellant gave a confession which he later signed at 8:30 p. m. that day. On December 2, 1964, the still-uncounseled defendant signed a second confession. A week later, with his attorney present, appellant pleaded guilty to uttering a forged prescription. The trial judge sentenced appellant to an indeterminate sentence not to exceed 20 years.

Appellant filed a petition seeking postconviction relief on November 17, 1969, alleging (1) that the plea was involuntary and had not been made with complete understanding because appellant erroneously thought that his arrest and confession were legal and because he was induced to plead by promises of treatment, and (2) that both his conviction and his sentence

violate the prohibitions of the Eighth and Fourteenth Amendments against cruel and unusual punishment.

A postconviction hearing was held March 2 and 3, 1970. Appellant testified that Lieutenant Williams had assured him that the court would be more interested in helping him than punishing him. Williams, it was claimed, had stated that he would intercede on appellant's behalf and see that he received treatment at the Federal treatment center in Lexington, Kentucky. Appellant contends that he believed Williams could arrange for this treatment. Appellant felt that his reasoning had been impaired due to his withdrawal symptoms. Finally, appellant testified, he signed the confession, and later pleaded guilty as charged, because of Williams' assurances. While he admitted that he had stated at the plea hearing that his plea was voluntary and that he had received no threats or promises, he asserted that he had been told that such admissions were proper and routine. He testified at the postconviction hearing that he did not tell his attorney about statements made to him by Williams.

At the postconviction hearing, Lieutenant Williams admitted that appellant was having withdrawal symptoms during questioning and that he had discussed appellant's drug problem with him. However, Williams denied making any specific threats or promises to appellant. He stated that he could not remember mentioning the treatment center at Lexington.

■ Assuming for the sake of argument that the arrest and detention of appellant were constitutionally defective, the question arises whether appellant may raise such defects after tendering a plea of guilty. The United States Supreme Court has recently answered that precise question in the negative. In McMann v. Richardson, 397 U. S. 759, 90 S. Ct. 1441, 25 L. ed. 2d 763 (1970), state prisoners alleged that their guilty pleas were products of confessions obtained by physical coercion. The court ruled that allegations that the pleas were motivated by coerced confessions, without more, did not entitle the prisoners to a habeas corpus hearing or relief. The logic advanced in McMann is compelling:

"* * * [T]he decision to plead guilty before the evidence is in frequently involves the making of difficult judgments. All the pertinent facts normally cannot be known unless witnesses are examined and cross-examined in court. Even then the truth will often be in dispute. In the face of unavoidable uncertainty, the defendant and his counsel must make their best judgment as to the weight of the State's case. Counsel must predict how the facts, as he understands them, would be viewed by a court. If proved, would the facts convince a judge or jury of the defendant's guilt? On those facts would evidence seized without a warrant be admissible? Would the trier of fact on those facts find a confession voluntary and admissible? Questions like these cannot be answered with certitude; yet a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Waiving trial entails the inherent risk that the good-faith evaluations of a reasonably competent attorney will turn out to be mistaken either as to the facts or as to what a court's judgment might be on given facts." 397 U. S. 769, 90 S. Ct. 1448, 25 L. ed. 2d 772.

McMann does not apply to situations "where the circumstances that coerced the confession have abiding impact and also taint the plea." 397 U. S. 767, 90 S. Ct. 1447, 25 L. ed. 2d 771. See, State ex rel. Drysdale v. Tahash, 278 Minn. 361, 154 N. W. 2d 691 (1967). Neither does McMann pertain to defendants who plead while uncounseled. See, Pennsylvania ex rel. Herman v. Claudy, 350 U. S. 116, 76 S. Ct. 223, 100 L. ed. 126 (1956).

In the present case the lower court was justified in rejecting appellant's contention that he pleaded guilty because of his reliance upon a claimed promise by Lieutenant Williams. At the time of entering his plea, appellant testified under oath that no threats or promises had been made in an effort to elicit a guilty plea. That testimony corroborates similar statements made in his two inculpatory confessions. No believable evidence exists upon which it could be found that the confessions were induced

by a promise, much less that any promise had an abiding impact resulting in the guilty plea.

Even if the confessions and evidence obtained at the time of arrest were suppressible, the plea of guilty in this case should be sustained because appellant was represented by counsel. As pointed out in McMann, a decision to plead guilty must necessarily rest upon counsel's answers, uncertain as they may be. Appellant's attorney may have concluded that the state would obtain a conviction without the confession or without this evidence or without both, on the theory that druggists would identify him as the forger and that it could easily be proved that he had access to and had been driving a car identified by license number at the scene of one of the crimes. In addition, the attorney might have considered the possibility that either the confession or evidence in question or both would not be suppressed.

Appellant had the burden of proving a broken bargain by a fair preponderance of the evidence. Coolen v. State, 288 Minn. 44, 179 N. W. 2d 81 (1970). The judge at the postconviction hearing did not believe that appellant had sustained that burden, and his findings are accorded great weight. A lower court's findings of fact will not be reversed on appeal unless they are manifestly and palpably contrary to the evidence. State, by Peterson, v. Bentley, 245 Minn. 334, 71 N. W. 2d 780 (1955).

■ Even if appellant could raise as an issue the legality of his arrest, he would not prevail. It is evident that Lieutenant Williams had probable cause to believe that a felony had been committed and that appellant had committed it. Minn. St. 629.34. The Hopkins Police Department had reasonable cause to arrest appellant based on the information supplied to them by Lieutenant Williams. He was to them a reliable informant. See, State ex rel. Law v. District Court, 276 Minn. 324, 150 N. W. 2d 18 (1967). While Officer Opitz may not have had probable cause to suspect appellant on the basis of personal knowledge, the knowledge of another police officer may be imputed to him. As we stated in State v. Radil, 288 Minn. 279, 283, 179 N. W. 2d 602,

605 (1970), certiorari denied, 401 U. S. 921, 91 S. Ct. 910, 27 L. ed. 2d 825 (1971), "[i]n a metropolitan environment, with many police and fast-moving criminal activities, it is unrealistic to demand that each officer in the department personally know all the facts necessary to justify an arrest."

Similarly, it should not be necessary that an officer in a metropolitan area have personal knowledge of all the facts indicating probable cause when requested to arrest someone by police from another community who do have probable cause.

■ Cruel and unusual punishments violate both the United States and Minnesota Constitutions. U. S. Const. Amend. VIII; Minn. Const. art. 1, § 5. Robinson v. California, 370 U. S. 660, 82 S. Ct. 1417, 8 L. ed. 2d 758 (1962), invalidated a California statute that made addiction to narcotics a crime. Appellant, relying on Robinson, argues that since procuring drugs is a necessary part of the addiction, punishment for doing so is tantamount to punishment for addiction. Robinson, however, does not lead to that conclusion; indeed, the court noted that the "statute * * * is not one which punishes a person for the use of narcotics, for their purchase, sale or possession, * * *. Rather, * * * [it] makes the 'status' of narcotic addiction a criminal offense * * *." 370 U. S. 666, 82 S. Ct. 1420, 8 L. ed. 2d 762. In Powell v. Texas, 392 U. S. 514, 533, 88 S. Ct. 2145, 2154, 20 L. ed. 2d 1254, 1268 (1968), upholding a public drunkenness statute, the court explained that the "entire thrust of Robinson's interpretation of the Cruel and Unusual Punishment Clause is that criminal penalties may be inflicted only if the accused has committed some act, has engaged in some behavior, which society has an interest in preventing * * *." Society has a clear interest in restricting the supply of narcotics.

The Powell and Robinson cases illustrate that appellant's conviction does not violate the Federal Constitution. Similarly, Steeves v. State, 287 Minn. 476, 178 N. W. 2d 723 (1970), negatives any contention that the state constitution is violated. In Steeves, conviction was upheld for the mere possession of nar-

cotics by an admitted drug addict. The conclusion follows that the state may prohibit procurement of narcotics through forgery.

■ We also reject appellant's final contention that a sentence of 20 years for forging a prescription for narcotics is so harsh as to violate the state and Federal constitutional prohibitions against cruel and unusual punishment. At the time of appellant's arrest and sentence, such acts were punishable for as much as 20 years. The trial court imposed an indeterminate sentence which could not exceed the legislated maximum of 20 years. In so doing, the trial judge had the benefit of a presentence investigation and was aware that appellant had a prior conviction for possession of narcotics and had been placed on probation.

The severity of criminal sanctions is a legislative concern. A lawmaking body is equipped to weigh the policy considerations involved and determine what sanctions, if any, serve the interests of the people it represents. See, State v. Anderson, 280 Minn. 461, 159 N. W. 2d 892 (1968) (upholding a 1-year penalty for prostitution); State v. Moilen, 140 Minn. 112, 167 N. W. 345 (1918) (upholding a 5-year penalty for criminal syndicalism).[1]

A second consideration for us is the propriety of overturning the trial judge's decision. Unless a sentence is flagrantly in excess of what justice and common humanity would approve, it may not be reversed because it is unnecessarily severe. The trial court has great discretion in sentencing, and an appellate court may not substitute its own judgment. State v. Hanson, 289 Minn. 103, 182 N. W. 2d 706 (1971) (upholding a 10-year sentence for

[1] We reiterate what this court stated in State v. Gamelgard, 287 Minn. 74, 80, 177 N. W. 2d 404, 408 (1970): "* * * We are not prepared at this time to hold that the appellate jurisdiction afforded to this court in all cases by our constitution embraces appellate review of sentences. We do, however, recommend the problem illustrated by this case to the legislature for its consideration in light of widely expressed views that sentences in serious criminal cases should be subject to review by appeal." See, A. B. A. Standards, Appellate Review of Sentences (Approved Draft, 1968).

aggravated forgery); Steeves v. State, *supra* (upholding a 10-year sentence for mere possession of narcotics).

Affirmed.