STATE of Minnesota, Respondent,

v.

Robert John LOTHENBACH, Appellant.

No. 50666.

Supreme Court of Minnesota.

Aug. 29, 1980.

Rehearing Denied Oct. 3, 1980.

---

Phillip S. Resnick, Minneapolis, for appellant.

Warren Spannaus, Atty. Gen., Thomas J. Foley, County Atty., and Steven C. DeCoster, Asst. County Atty., St. Paul, for respondent.

Heard before OTIS, PETERSON, and SCOTT, JJ., and considered and decided by the court en banc.

PETERSON, Justice.

Defendant, originally charged with four counts of illegal possession of controlled substances, negotiated, through his counsel, a plea agreement whereby he entered a plea to the count charging him with possession of cocaine, and the trial court sentenced him to a prison term of 2 years with execution stayed and defendant placed on probation, the first 9 months to be served in the workhouse. Defendant's sentence has been stayed pending appeal. Two issues are raised by the appeal: first, whether defendant's guilty plea constitutes a forfeiture of his right to appeal the district court's denial of his motion to suppress evidence on Fourth Amendment grounds;

second, whether the district court erred in denying the motion to suppress. We conclude that while technically defendant's plea was a conditional guilty plea, which our rules do not permit, and that normally the proper procedure would be to remand for withdrawal of plea, in substance the procedure used by defendant to obtain appellate review of the Fourth Amendment issue is no different from the procedure of pleading not guilty and then stipulating to the state's evidence, a procedure which the trial court indicated that it would be willing to follow. Under the circumstances and in the interests of judicial economy, we therefore address the Fourth Amendment issue raised by defendant. Doing this, we conclude that defendant's Fourth Amendment rights were violated by the search of his automobile and that defendant's conviction must be reversed.

At 11 a. m. on April 20, 1979, the St. Paul Police Department received an anonymous telephone report that someone was selling drugs from a multicolored car parked in the Dairy Queen parking lot at the intersection of Rice and Sycamore. When police officers arrived at the scene they observed a black Camaro with rainbow striping, which apparently was the car referred to by the anonymous informant. The officers approached the car and looked in the window but saw nothing unusual. Defendant, the driver, and his passenger were calm until the police explained that they were investigating a report of someone selling drugs from a car similar to defendant's. Apparently at this point both defendant and the passenger showed signs of nervousness. One officer then took the driver's licenses of defendant and the passenger and returned to the squad car to run a license check; this check did not turn up anything unusual. The other officer, left standing alone at the passenger's side of the vehicle, ordered the passenger out of the automobile and frisked him. This frisk did not result in the discovery of any weapons or any other evidence. This officer then escorted the passenger to the squad car, after which

he returned to defendant's car. Defendant was still sitting at the wheel. The officer then opened the door on the passenger side of the vehicle and felt under the passenger seat. He found nothing. He then opened the glove box located between the two front seats and saw a switchblade, a plastic bag of pills, two containers of white powder, a plastic bag containing a substance that looked to him like marijuana, and several hand-rolled cigarettes. Another officer arrived about this time and ordered defendant out of the car and after giving defendant a *Miranda* warning obtained defendant's cooperation in opening the trunk. In the trunk the officers found a large amount of marijuana. Chemical analysis subsequently established that the evidence taken from the vehicle included approximately 10 grams of cocaine and 4 pounds of marijuana.

It was only after completing the search that the police learned the identity of the telephone informant. This person apparently approached one of the officers and told him that what he had seen was the driver (defendant) take a cigarette from the ashtray, show it to the passenger, then light the cigarette and pass it to the passenger. He stated that he called the police because he "wasn't sure what he saw."

The district court denied the motion to suppress.

Thereafter, defendant entered the negotiated guilty plea to one of the four offenses with which he was charged. Before defendant entered his guilty plea, defendant's counsel made clear that defendant desired to appeal the denial of his motion to suppress:

MR. RESNICK: I believe we will be appealing the matter, Your Honor, after we dispose of it first. We have had some discussions regarding the plea negotiation. It's my understanding that my client will enter a plea of guilty to Count IV, the maximum sentence to be imposed would be zero to two years, and at the time of sentencing the remaining three counts would be dismissed.

THE COURT: Is that your understanding?

MS. MARRINAN: That's correct.

THE COURT: All right. I have raised this issue with you only to solidify your position. If you indeed are going to plead to Count IV do you feel you can do that without waiving your right to process this matter on the basis of an appeal, or would you prefer to have the Court make a finding as it relates to Count IV so that your record is intact. I don't know that it makes any difference but I raise that with you to allow you an opportunity—

MR. RESNICK: I'm not sure that it does. If the Court wishes to do that just to make sure—

THE COURT: I don't wish to do anything. I don't really care. It makes no difference to me at all.

MR. RESNICK: I think the record should reflect the reason we are entering a plea is because the motion to suppress was denied and that we're entering the plea now so that we can conclude the case at the District Court level and appeal it to the Supreme Court.

THE COURT: All right.

■ 1. The first issue involves the propriety of a conditional guilty plea, that is, a plea by which the defendant pleads guilty but expressly reserves the right to appeal the denial of his motion to suppress evidence on constitutional grounds.

Rule 14.01, Minn.R.Crim.P., provides:

A defendant may plead as follows:

(a) Guilty.

(b) Not guilty.

(c) Not guilty by reason of mental illness or mental deficiency.

(d) Double jeopardy or that prosecution is barred by Minn.Stat. § 609.035 (1971), either of which may be pleaded with or without the plea of not guilty.

The traditional viewpoint in Minnesota, as well as elsewhere, has been that a guilty plea by a counseled defendant operates as a waiver of all nonjurisdictional defects, including Fourth Amendment claims. *McLaughlin v. State*, 291 Minn. 277, 190 N.W.2d 867 (1971). As stated in *Tollett v. Henderson*, 411 U.S. 258, 267, 93 S.Ct. 1602, 1608, 34 L.Ed.2d 172 (1973):

[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant had solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

As a result, defendants wishing to obtain appellate review of pretrial decisions to suppress evidence have not had the option of pleading guilty but have been forced to enter not guilty pleas and go to trial. The only alternative, one used in a number of cases to obtain appeal in this court, has been for the defendant to enter a plea of not guilty, waive his right to a jury trial, and then stipulate to the prosecution's case. Nothing prevents the prosecutor from cooperating in such a procedure and in effect circumventing the "ban" on conditional guilty pleas. This practice was recognized by the United States Supreme Court in *Lefkowitz v. Newsome*, 420 U.S. 283, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975), when the court held that a conditional guilty plea under a New York statute which permitted such pleas did not foreclose federal habeas review of the denial of the suppression motion. In holding this the Court stated in relevant part as follows:

New York could easily have provided that, rather than pleading "guilty," a defendant who intends to appeal his pretrial claim of an involuntary confession or an unlawful seizure but has no desire to impose upon the State the burden of going to trial should plead "not guilty" and at the same time stipulate to all the evidence the State can introduce to prove his

guilt. Upon the inevitable entry of a judgment of conviction based on the stipulation, the defendant would then be able to pursue his state appellate remedies. And, presumably, because there would then be no "solemn admission of guilt," all would concede that the defendant would not be foreclosed from pursuing those constitutional claims in a federal habeas corpus proceeding. But the only difference between such a procedure and the one New York has chosen is that the plea entered is labeled a plea of "not guilty" rather than "guilty" and there is a stipulation by the defendant as to the facts the state would prove demonstrating his guilt rather than a recitation by the defendant in court. The availability of federal habeas corpus depends upon functional reality, not upon an infatuation with labels.

420 U.S. 290 n. 7, 95 S.Ct. 890 n. 7.

A recent note—*Conditional Guilty Pleas*, 93 Harv.L.Rev. 564 (1980)—examines the arguments for and against conditional guilty pleas and makes a strong case for permitting them. *See also* ABA Standards, Criminal Appeals § 1.3(a)(iii), comment (c) (1970). Several federal circuits and at least four states now allow such conditional pleas. Note, *Conditional Guilty Pleas*, 93 Harv.L.Rev. 564, 565–66 (1980).

The preferable way for adopting such a procedure in Minnesota would be through the amendment of R.Crim.P. 14.01. We neither encourage nor discourage the adoption of such an amendment. In this case we have concluded that the lack of authorization for such a plea does not mean that defendant should be deemed to have forfeited his right to have the Fourth Amendment issue decided by this court. Defendant did not waive—that is, intentionally relinquish—this right; indeed, he expressly reserved it. Thus, at the very least defendant would be entitled to withdraw his plea, plead not guilty, and either stipulate to the state's case or put the state to the expense of a trial. However, the prosecutor in this case did not object to the procedure followed and the trial court made it clear that it would have permitted defendant to get around the problem by stipulating to the state's evidence. Under these circumstances and in the interest of judicial economy, we have decided to put substance over form and treat this as an appeal from a finding of guilty based on stipulated facts.

2. Doing that and addressing the issue raised by defendant, we conclude that his Fourth Amendment rights were violated and that his conviction must be reversed.

■ The fact that the tip was an anonymous tip from an unnamed informant does not mean that the officers were unjustified in at least investigating the situation by driving to the Dairy Queen parking lot. *Adams v. Williams*, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Marben v. State, Department of Public Safety*, 294 N.W.2d 697 (Minn.1980).

■ However, the anonymous tip clearly could not be relied upon by the officer as establishing probable cause to search, since the informant apparently had not even given his name and since his tip was merely a conclusionary allegation of criminal activity. Further, such a tip was entitled to little weight in any on-the-scene totality-of-circumstances analysis of probable cause by the officers. At a minimum, what was needed was "a very substantial showing of corroboration by direct observation of facts which [were] themselves incriminating." 1 W. LaFave, Search and Seizure § 3.5(b), at 630 (1978). Here, however, the only additional information the officer had before he began his search of the car was that defendant and the passenger became nervous when told that the officers were investigating them for selling drugs. In the context of his case, this nervousness was not sufficient, either alone or in combination with the weak tip, to establish probable cause to search. *See State v. Gallagher*, 275 N.W.2d 803 (Minn.1979); 1 W. LaFave, Search and Seizure § 3.6(d) (1978).

■ The motor vehicle exception to the search warrant requirement therefore does

not apply, because the police did not have probable cause before they conducted their search. An alternative theory relied upon by the state is that the initial search of the car and glove box were justified as a protective search for weapons during permissible investigatory detention.

Recently, in *State v. Gilchrist,* (Minn. 1980), we upheld a limited protective weapons search of a car when the police had "articulable suspicion" not only to detain the defendant but to subject him to such a search. This case, however, is easily distinguishable because the police, by their own conduct, demonstated that they were not concerned for their own safety. Further, in this case, unlike in *Gilchrist,* the police articulated no reason for believing that a limited weapons search of defendant's car was necessary. The record is clear that they were searching not for guns but for drugs.

Concluding that defendant's Fourth Amendment rights were violated by the initial search and that the other evidence was the fruit of this illegality, we reverse.

Reversed.

AMDAHL, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.