**STATE of Minnesota, Respondent,**

v.

**Mike Thomas MAHR, Appellant.**

**No. A04–1390.**

Court of Appeals of Minnesota.

Aug. 9, 2005.

Mike Hatch, Attorney General, St. Paul, MN, and Katherine M. Johnson, Chisago County Attorney, Mark D. Person, Assistant County Attorney, Center City, MN, for respondent.

John M. Stuart, State Public Defender, Jodie L. Carlson, Assistant State Public Defender, Minneapolis, MN, for appellant.

Considered and decided by SHUMAKER, Presiding Judge, WILLIS, Judge, and FORSBERG, Judge.

## OPINION

FORSBERG, Judge.*

Appellant Mike Thomas Mahr was convicted of first-degree controlled substance crime, in violation of Minn.Stat. §§ 152.021, subds. 2a, 3(a); .096, subd. 1 (2002) (conspiracy to manufacture methamphetamine), following a trial on stipulated facts pursuant to *State v. Lothenbach,* 296 N.W.2d 854 (Minn. 1980). Appellant challenges his conviction, alleging that (1) the district court erred by refusing to suppress evidence discovered during a stop of the vehicle in which appellant was a passenger; (2) his waiver of his jury trial rights was not knowing and intelligent because he did not realize that he was waiving his right to contest the sufficiency of the evidence; and (3) the district erred by sentencing him on more than one conviction arising out of the same behavioral incident.

Because the officer had a particularized and objective basis to make a limited investigatory stop and because appellant made a knowing and intelligent

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

waiver of his jury trial rights, we affirm his conviction. Although the district court transcript reflects imposition of only one sentence, the district court records and Department of Corrections accounts recite multiple sentences; we order these records corrected to accurately reflect the imposition of one sentence.

## FACTS

On March 26, 2003, Chisago City police officer Jennifer Knutson ran the license plate of a Jeep Cherokee that passed her and discovered that the owner of the car, listed as Joshua Budd, had a suspended license. She turned her squad around, caught up with the Jeep after about one mile, and pulled it over using her squad lights. Knutson was unable to see the driver during this period of time, but stated that she could see two adult figures in the Jeep. Knutson left her squad and walked up to the Jeep. She could not see in the back windows of the Jeep because they had been spray-painted black. When she got to the driver's window, Knutson discovered that the driver was a female, and thus apparently not Joshua Budd. Knutson observed that the driver (1) was sweating profusely, despite the cool weather, (2) was extremely nervous, (3) spoke quickly and was laughing, and (4) told Knutson she had been looking for her sunglasses. The driver's physical movements were jerky and Knutson described her as "jittery and excitable." Knutson was not a Certified Drug Regulation Expert, but had stopped other drivers who were impaired by drugs; she formed the impression that the driver was under the influence of some drug, probably a stimulant.

Officer Knutson told the driver that she stopped the car because the registration indicated that the owner had a suspended license. The driver informed Knutson that she had just purchased the car, hadn't transferred title, and had no insurance. The driver stated that she didn't have her license with her and gave her name as Jerilyn Marie Bjorklund, DOB 09/29/64. Knutson ran a license check and found no such name on file. She then checked with the dispatcher, who could find no record of that name. Knutson returned to the Jeep and asked the driver for her real name and date of birth. She responded that she was legal.[1] Knutson then asked the passenger, appellant Mike Thomas Mahr, for his license, and he stated that he didn't have it with him. Appellant gave his name as Steven Thomas Marshall, DOB 10/09/84. Knutson continued to question him, because he appeared to be closer to 40, rather than 19 years old. Appellant stated that he had given her his son's birth date and finally admitted that his name was Michael Thomas Mahr, DOB 12/13/60. Knutson ran a license check, which revealed that appellant's license was suspended and that he had three active warrants. Knutson placed both appellant and Shanahan under arrest.

Police officers who searched the Jeep found drug paraphernalia and three stolen checks belonging to Beulah Giddings in Shanahan's purse and other items associated with meth manufacturing. Police contacted Giddings' daughter, who had a power of attorney on her behalf. The daughter stated that appellant was watching Giddings' home and gave police permission to search it. Once there, police discovered evidence of a meth lab and eventually arrested several people. A search warrant was issued and a more extensive search was conducted. The evidence discovered during this search provided the basis for the charges brought against appellant.

---

1. The driver never gave her name, but was eventually identified as Jerilyn Shanahan.

Conceding that if the original stop was lawful, the search of Giddings' home was lawful, appellant contested the stop at the omnibus hearing. The district court issued written findings ruling that the stop was lawful and concluding that Knutson had a basis to stop the car based on the suspended license of the registered owner. The court further found that both the equipment violation (obstructed windows) and Knutson's observations of indicia of drug use in Shanahan provided a basis for prolonging the stop. The district court therefore refused to suppress the evidence.

On the scheduled trial date, October 27, 2003, appellant agreed to submit the matter on stipulated facts under *State v. Lothenbach*, 296 N.W.2d 854 (Minn.1980). Before doing so, appellant was questioned by the court:

> The Court: And specifically you understand that you're giving up to have— the right to have a jury of 12 persons determine the facts and determine your guilt or innocence on these matters?
>
> The Defendant: Yes, Your Honor.
>
> The Court: You also understand that it's—there's a substantial likelihood under this procedure that you may be found guilty and that this is, in essence, to preserve your right to challenge the search and seizure issue in this case?
>
> The Defendant: Absolutely, right, Your Honor.

On October 28, 2003, the district court entered an order finding appellant guilty; no findings of fact were made. Appellant was sentenced on April 28, 2004, to the presumptive sentence of 110 months on one count of conspiring to manufacture methamphetamine.

## ISSUES

1. Did the district court err by refusing to suppress evidence discovered as the result of an investigatory stop?

2. Did appellant, who agreed to a *Lothenbach* proceeding, make a knowing and intelligent waiver of his jury trial rights?

3. Did the district court err by imposing multiple punishments for a single behavioral incident?

## ANALYSIS

### Legality of Stop

 In an appeal of the district court's pretrial order refusing to suppress evidence, we independently review the facts and determine as a matter of law, whether the district court erred in refusing to suppress the evidence. *State v. Harris*, 590 N.W.2d 90, 98 (Minn.1999). A police officer may make a limited investigatory stop if the officer has a "particularized and objective basis" for suspecting that the person stopped is engaged in criminal activity. *State v. Pike*, 551 N.W.2d 919, 921 (Minn.1996) (quotation omitted). When a police officer is aware that the owner of a vehicle has a revoked license, there is a sufficient basis for reasonable suspicion of criminal activity if the officer observes the vehicle being driven. *Id.* at 922. But if the officer's initial reasonable suspicion is dispelled by further investigation prior to the stop, a limited investigatory stop is not justified. *State v. Britton*, 604 N.W.2d 84, 88 (Minn.2000); *Pike*, 551 N.W.2d at 922. Once the officer's initial suspicions are satisfied, the scope or duration of an investigatory stop may not be prolonged without additional justification. *State v. Fort*, 660 N.W.2d 415, 418–19 (Minn.2003).

 Knutson stopped the Jeep in which appellant was a passenger because a motor vehicle check revealed that the registered owner, a male, had a suspended license. Knutson was not aware that the driver of the Jeep was female until she approached

the driver's window, because the rear windows of the Jeep were painted black. Although Knutson's initial suspicions based on the suspended license of the male registered owner were dispelled, she observed that the driver, Shanahan, was sweating profusely in cool weather, jittery, excitable, nervous, and moving with jerky motions, actions that Knutson identified with drug usage. Shanahan stated that she had just bought the Jeep, had no insurance, could not produce a driver's license, and initially both she and appellant gave Knutson false names. Upon learning his true name, Knutson discovered that appellant had three outstanding arrest warrants and placed him under arrest. During the subsequent search of appellant, Shanahan, and the Jeep, stolen checks and materials associated with methamphetamine manufacturing were discovered. Based on this, a warrant was issued to search the house where appellant was staying. The evidence discovered provided a basis for the charges against appellant.

Knutson's stop of the Jeep was justified by the knowledge that the registered owner had a suspended license. Knutson's further observations provided a sufficient basis for a particularized and objective belief that the occupants of the Jeep were engaged in criminal activity. The investigative stop of the Jeep was thus lawful and the district court therefore did not err by refusing to suppress the evidence.

*Jury Trial Waiver*

■ In *State v. Busse*, 644 N.W.2d 79, 88–89 (Minn.2002), the supreme court stated that a defendant who uses the *Lothenbach* procedure may not obtain appellate review of the sufficiency of the evidence. A defendant who wants to challenge the state's proof must proceed to trial instead of agreeing to a *Lothenbach* proceeding. *Busse*, 644 N.W.2d at 89. This court has differentiated between a *Lothenbach* pro-

ceeding and a stipulated-facts trial under Minn. R.Crim. P. 26.01, subd. 3, stating that the rule permits the defendant to raise issues on appeal as from any trial to the court, whereas the *Lothenbach* procedure is intended merely to preserve pretrial issues when the facts are basically undisputed. *State v. Riley*, 667 N.W.2d 153, 158 (Minn.App.2003), *review denied* (Minn. Oct. 21, 2003).

Contrary to appellant's assertion that a *Lothenbach* proceeding is the equivalent of a guilty plea, this court stated that

a *Lothenbach* proceeding does not involve a guilty plea. A true *Lothenbach* stipulation does not involve a concession of guilt, and is intended only to preserve the defendant's right of appeal while avoiding an unnecessary jury trial. We therefore disagree with appellant's contention that an agreement to a stipulated-facts trial is the functional equivalent of a guilty plea[.]

*State v. Johnson*, 689 N.W.2d 247, 252–53 (Minn.App.2004) (citations and quotations omitted), *review denied* (Minn. Jan. 20, 2005).

■ Before proceeding here, appellant was informed that, by agreeing to a *Lothenbach* proceeding, he was giving up his rights to a jury trial, to have a jury decide his guilt or innocence, to confront witnesses, and to testify on his own behalf. The district court also told him that there was a "substantial likelihood" that he would be found guilty and that the procedure was being used to preserve his right to challenge the search and seizure issue. Appellant conceded that he understood and waived these rights. The record reflects that appellant made a knowing and intelligent decision to use a *Lothenbach* proceeding, rather than proceed to a jury trial.

■ Appellant points out that the court failed to make written findings, as required by Minn. R.Crim. P. 26.01, subds. 2, 3, which state that in a felony trial without a jury, including a trial on stipulated facts, the district court must issue written findings within seven days after the general finding of guilt. The district court did not comply with this rule.

On its face, the rule applies to court trials and to stipulated-facts trials; as stated above, a *Lothenbach* proceeding technically is neither. In a court trial, under rule 26.01, subd. 2, the court hears and decides disputed facts; in a stipulated-facts trial under rule 26.01, subd. 3, the facts are not disputed, but the court determines if the defendant's guilt is proved beyond a reasonable doubt, and the defendant is permitted to appeal as from any other trial. The *Lothenbach* proceeding is a concession that the state's facts are accurate, with the primary purpose of permitting the defendant to appeal a pretrial ruling, while avoiding a trial for reasons of judicial economy. Because a *Lothenbach* proceeding is not a court trial or a stipulated facts trial, the findings requirement of rule 26.01 does not apply.

*Multiple Sentences*

■ When multiple charges arise out of a single behavioral incident, Minn. Stat. § 609.035 limits punishment to a single sentence. *State v. Bookwalter,* 541 N.W.2d 290, 293 (Minn.1995). "Multiple punishments" refers to multiple sentences, including concurrent sentences. *Id.* The test for whether multiple offenses arose out of a single behavioral incident is whether they occurred at the same time and place and whether the conduct was motivated by an effort to obtain a single criminal objective. *Id.* at 294 (stating that court should consider factors of time, place, and motivation in determining if conduct is a single behavioral incident).

Here, all three charges arose out of the search conducted at the Giddings' residence.

According to the sentencing transcript, the district court sentenced appellant only on the first count of the complaint, conspiracy to manufacture methamphetamine. The Chisago County Register of Actions and Department of Corrections inmate base file record, however, reflect convictions and concurrent sentences on all three charged offenses. We therefore order these records to be modified to reflect one sentence arising out of this incident.

*Appellant's Pro Se Briefs*

In addition to the issues raised by his counsel, appellant argues that the state suppressed exculpatory evidence by failing to test evidence recovered pursuant to the search warrant for fingerprints. Appellant provides no basis for this claim.

■ Appellant also states that he was denied his right to a speedy trial. Generally, a defendant is guaranteed the right to a jury trial within 60 days after a written or oral demand, unless good cause for a delay is shown. Minn. R.Crim. P. 11.10. No speedy trial demand was made. While a delay beyond 60 days is presumptively prejudicial, the court must examine (1) the reason for the delay; (2) whether the defendant asserted the right to a speedy trial; and (3) whether the defendant has been prejudiced by the delay. *State v. Johnson,* 498 N.W.2d 10, 15–16 (Minn.1993). Based on the record before us, all delays here occurred by defense request. Appellant's contention has no merit.

## DECISION

The arresting officer had a reasonable suspicion of criminal activity that provided a basis for an investigatory stop, and her continuing observations of suspicious activ-

ity supported a continuation of the stop. Appellant was informed and made a knowing and intelligent waiver of his rights to a jury trial when he decided to submit this matter as a *Lothenbach* proceeding. Because the primary issue here was the district court's pretrial ruling, its findings in support of that ruling are sufficient to satisfy the requirements of Minn. R.Crim. P. 26.03, subds. 2, 3. We direct the district court and the Department of Corrections to correct their records to reflect one conviction and one sentence arising out of this incident. Appellant's pro se issues are without merit. We therefore affirm appellant's conviction and sentence, as modified.

**Affirmed as modified.**