*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1453**

State of Minnesota,
Respondent,

v.

Harry Maddox, III,
Appellant.

**Filed May 4, 2015
Affirmed
Larkin, Judge**

Otter Tail County District Court
File No. 56-CR-13-3176

Lori Swanson, Attorney General, St. Paul, Minnesota; and

David J. Hauser, Otter Tail County Attorney, Ryan C. Cheshire, Assistant County Attorney, Fergus Falls, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Sara J. Euteneuer, Assistant Public Defender, St. Paul, Minnesota (for appellant)


        Considered and decided by Larkin, Presiding Judge; Halbrooks, Judge; and Smith,

Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Appellant challenges his felony conviction of offering a forged check, arguing that his guilty plea was invalid because it was inaccurate and involuntary. We affirm.

## FACTS

Respondent State of Minnesota charged appellant Harry Maddox III with offering a forged check. Maddox requested the services of the public defender, the district court granted his request, and an attorney from the public defender's office represented him at his initial court appearance.

Prior to the first omnibus hearing, Maddox filed two handwritten pro se motions. The first motion requested "severance of offenses," "assignment of cases in more than one district to a 'single' judge," and that the district court subpoena the police chief. The second motion requested that the district court "enter facts for 'evidence' against public defender . . . and his supervisor . . . for subpoenas to court to answer the charges of: (Ineffective counsel)."

Maddox appeared in court with his attorney for an omnibus hearing. Maddox's attorney informed the district court that Maddox's pro se motions were meritless and that he would not argue in support of them. The district court asked Maddox if he wanted to discharge his attorney. Maddox indicated that he wanted his attorney to continue to represent him. However, Maddox also indicated that he wanted to serve as "co-counsel" and that he wanted the district court to address his pro se motions. In a written order, the district court construed Maddox's request as one for "hybrid representation." The district

2

court concluded that Maddox did not have a right, under either the state or federal constitution, to be heard on pro se motions that were not adopted by his defense counsel. Although the district court concluded that it could exercise its discretion to accept the pro se motions, it declined to do so.

Maddox continued to file documents with the district court indicating his desire for hybrid representation and asking the district court to reconsider its ruling on that issue. The district court "deemed" Maddox "to have entered a motion for reconsideration" of its written order, scheduled a hearing on the motion, and arranged for "specially-appointed counsel" to argue Maddox's position. After hearing arguments from the specially-appointed attorney, the state, and the public defender's office, the district court denied Maddox's motion for reconsideration and affirmed its earlier order regarding hybrid representation.

At a later hearing, Maddox attempted to enter a "*Lothenbach* plea" to preserve the hybrid-representation issue for appeal.[1] The district court concluded that hybrid representation was not a dispositive pretrial issue and therefore refused to accept the "*Lothenbach* plea."

---

[1] A "*Lothenbach* proceeding" is a proceeding in which a defendant submits to a court trial on stipulated facts without waiving the right to appeal pretrial issues. *See State v. Lothenbach*, 296 N.W.2d 854, 857-58 (Minn. 1980) (approving this procedure). "Minn. R. Crim. P. 26.01, subd. 4, effective April 1, 2007, implements and supersedes the procedure authorized by [*Lothenbach*]." *State v. Antrim*, 764 N.W.2d 67, 69 (Minn. App. 2009). Under Rule 26.01, subdivision 4, the parties must "agree that the court's ruling on a specified pretrial issue is dispositive of the case, or that the ruling makes a contested trial unnecessary."

At a subsequent hearing, Maddox appeared in court to enter a plea under *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160 (1970). The parties submitted a written plea agreement, in which Maddox agreed to plead guilty to offering a forged check and to serve 18 months in prison, a sentence at the bottom of the presumptive range under the Minnesota Sentencing Guidelines. During the plea colloquy with the prosecutor, the following exchange occurred:

> PROSECUTOR: Except for [the plea agreement] has any other person made any promise or threat to you or anyone you know in order to get you to plead guilty?
>
> MADDOX: What do you mean by "threats"? No threats or nothing, no. But it's just for the presumption of the circumstances; that's why I'm pleading guilty.
>
> PROSECUTOR: Okay. And we just want to make sure that you don't—there's not some other factor, some other promise, something you were told, or some threat to you or a family member or friend where you feel coerced into pleading guilty.
>
> MADDOX: Hmm. That's a tough question. Yes.
>
> PROSECUTOR: So do you believe that you're doing this on your own free will and volition?
>
> MADDOX: Well, to the powers that be, yes. Yeah.
>
> . . . .
>
> PROSECUTOR: Well, under the law, your plea has to be voluntary. It has to be—it cannot be coerced. . . .
>
> MADDOX: It is voluntary. . . .
>
> . . . .
>
> PROSECUTOR: Any promise or threat to you that in any way you feel that inhibits your ability to make a knowing and voluntary decision here.
>
> MADDOX: Well, I'm making an intelligent decision based on, like I said, again, the powers that be.
>
> PROSECUTOR: All right. Do you with knowledge and understanding of all these rights still wish to enter a plea of guilty?
>
> MADDOX: Yes.

Maddox agreed that he was pleading guilty to take advantage of the state's offer for sentencing at the low end of the presumptive range and to avoid prosecution as a career offender. Maddox also agreed that if the case were tried to a jury, the state would present (1) eyewitness testimony by police officers and people in the stores where the checks were presented to identify him, (2) testimony from a number of store clerks who would state that they received checks from Maddox and that the checks he provided were from the Schwartz's account, (3) testimony from members of the Schwartz family that they did not give Maddox permission to use their account to write the checks, (4) testimony that Maddox received property and services worth more than $250, and (5) testimony that the events underlying the charge occurred in Otter Tail County. The district court asked Maddox if he agreed there was a substantial likelihood that a jury would find him guilty. Maddox responded: "I know that beyond a shadow of a doubt."

The district court accepted Maddox's plea and sentenced him to serve 18 months in prison. Maddox appeals his conviction, arguing that his guilty plea was invalid.

**DECISION**

For a guilty plea to be valid, it must be accurate, voluntary, and intelligent. *Brown v. State*, 449 N.W.2d 180, 182 (Minn. 1989). "A defendant is free to simply appeal directly from a judgment of conviction and contend that the record made at the time the plea was entered is inadequate in one or more of these respects." *Id.*; *see also State v. Anyanwu*, 681 N.W.2d 411, 413 n.1 (Minn. App. 2004) ("[A] defendant who challenges a judgment of conviction against him based on an invalid guilty plea . . . may appeal directly to this court."). A defendant bears the burden of showing his or her plea was

5

invalid. *State v. Raleigh*, 778 N.W.2d 90, 94 (Minn. 2010). "Assessing the validity of a plea presents a question of law that [appellate courts] review de novo." *Id*.

## I.

Maddox argues that his guilty plea was not accurate because the factual basis was insufficient. "A proper factual basis must be established for a guilty plea to be accurate." *State v. Ecker*, 524 N.W.2d 712, 716 (Minn. 1994). "The factual basis must establish sufficient facts on the record to support a conclusion that defendant's conduct falls within the charge to which he desires to plead guilty." *Munger v. State*, 749 N.W.2d 335, 338 (Minn. 2008) (quotations omitted). "Although there are various ways to present the factual basis for a guilty plea, all of them contemplate the disclosure on the record of the specific facts that would establish the elements of the crime to which the defendant is pleading guilty." *State v. Misquadace*, 629 N.W.2d 487, 491-92 (Minn. App. 2001), *aff'd*, 644 N.W.2d 65 (Minn. 2002).

Maddox entered an *Alford* plea. "[A] defendant may plead guilty to an offense, even though the defendant maintains his or her innocence, if the defendant reasonably believes, and the record establishes, the state has sufficient evidence to obtain a conviction." *Ecker*, 524 N.W.2d at 716 (citing *Alford*, 400 U.S. at 37, 91 S. Ct. at 167). "[C]areful scrutiny of the factual basis for the plea is necessary within the context of an *Alford* plea because of the inherent conflict in pleading guilty while maintaining innocence." *State v. Theis*, 742 N.W.2d 643, 648-49 (Minn. 2007). An *Alford* plea is constitutionally acceptable when "the State demonstrate[s] a strong factual basis for the plea and the defendant clearly expresse[s] his desire to enter the plea based on his belief

that the State's evidence would be sufficient to convict him." *Id.* at 647 (quotation omitted). A district court may accept an *Alford* plea "if the court, on the basis of its interrogation of the accused and its analysis of the factual basis offered in support of the plea, reasonably concludes that there is evidence which would support a jury verdict of guilty and that the plea is voluntarily, knowingly, and understandingly entered." *Id.* (quotation omitted).

Maddox pleaded guilty to offering a forged check under Minn. Stat. § 609.631, subd. 3 (2012), which provides that "[a] person who, with intent to defraud, offers, or possesses with intent to offer, a forged check, whether or not it is accepted, is guilty of offering a forged check."

In this case, Maddox acknowledged that the state would present evidence that he offered checks from the Schwartz's account on more than one occasion and that the Schwartzes did not write the checks or give him permission to use the account. Because Maddox's name was not on the checks and he offered such checks on more than one occasion, the evidence is sufficient to reasonably infer that he knew the checks were forged and that he had the intent to defraud. *See State v. Neumann*, 262 N.W.2d 426, 430 (Minn. 1978) ("It is well established that before a plea of guilty can be accepted, the [district court] must make certain that facts exist from which the defendant's guilt of the crime charged can be reasonably inferred."), *abrogated on other grounds by State v. Moore*, 481 N.W.2d 355 (Minn. 1992); *Smith v. State*, 596 N.W.2d 661, 665 (Minn. App. 1999) (concluding that a manifest injustice did not exist where the defendant's testimony was "sufficient to infer [his] guilt").

7

Moreover, the plea colloquy shows that Maddox did not plead guilty to an offense more serious than his conduct warranted or to one greater than he could have been convicted of if he had gone to trial. Those are the standards by which this court assesses the accuracy of Maddox's guilty plea. *See State v. Warren*, 419 N.W.2d 795, 798 (Minn. 1988) (stating that the factual basis requirement "protects a defendant from pleading guilty to an offense more serious than defendant's conduct warrants"); *Carey v. State*, 765 N.W.2d 396, 400 (Minn. App. 2009), *review denied* (Minn. Aug. 11, 2009) ("The accuracy requirement protects the defendant from pleading guilty to a more serious offense than he or she could be properly convicted of at trial." (quotation omitted)).

Maddox argues that his guilty plea was inaccurate because "he did not acknowledge that there was a substantial likelihood that a jury would find that he knew the checks were forged or that he had the intent to defraud." But Maddox does not provide legal authority for the proposition that a defendant entering an *Alford* plea must separately acknowledge that a jury would find sufficient evidence regarding each element of the offense.

The supreme court has stated that, before accepting an *Alford* plea, "the court must be able to determine that the defendant, despite maintaining his innocence, agrees that evidence the State is likely to offer at trial is sufficient to convict" and that the "best practice . . . is to have the defendant specifically acknowledge on the record at the plea hearing that the evidence the State would likely offer against him is sufficient for a jury, applying a reasonable doubt standard, to find the defendant guilty of the offense to which he is pleading guilty." *Theis*, 742 N.W.2d at 649. In this case, the district court asked

8

Maddox if he agreed there was a substantial likelihood that a jury would find him guilty based on the evidence proffered by the state, and the proffer adequately addressed the elements of the offense. *See State v. Bryant*, 378 N.W.2d 108, 110 (Minn. App. 1985) (upholding the validity of a guilty plea even though the factual basis did not specifically address an element of the offense, reasoning that "[t]his omission [was] not fatal in light of the other overwhelming evidence"), *review denied* (Minn. Jan. 23, 1986). Maddox responded: "I know that beyond a shadow of a doubt." Maddox's acknowledgment was sufficient. Moreover, the record indicates nothing upon which Maddox might base a claim of innocence. *See id.* (stating that "Bryant claims he is not guilty of the crime but the record indicates nothing upon which he might base support for his claim of innocence"). We therefore conclude that Maddox's guilty plea was accurate.

## II.

Maddox argues that his guilty plea was not voluntary because it was "induced by the district court's refusal to consider his pro se motions." "The voluntariness requirement insures that the guilty plea is not in response to improper pressures or inducements." *State v. Jumping Eagle*, 620 N.W.2d 42, 43 (Minn. 2000) (quotation omitted). Maddox argues that his "guilty plea resulted when he was denied due process as a matter of law by the adverse rulings of the district court," which refused to allow hybrid representation. But Maddox does not offer, and we are not aware of, any legal authority establishing that a district court's "adverse rulings" may constitute "improper pressures or inducements" that render a guilty plea involuntary and invalid.

Moreover, there is nothing in the record to show that Maddox's guilty plea was in any way related to the district court's rulings on the hybrid-representation issue. Maddox notes that during the plea colloquy, he stated he was pleading guilty due to the "presumption of the circumstances" and "many other factors." Maddox argues that when considered in context, these statements make it clear that he "pled guilty as a result of the district court's ruling prohibiting him from filing pro se motions." But during the plea colloquy Maddox also stated that his plea was "voluntary" and he was "making an intelligent decision based on . . . the powers that be." Furthermore, Maddox explicitly agreed that he was pleading guilty to "take advantage of the state's offer, which is bottom of the box" and to avoid prosecution as a career offender. The benefit provided by a plea agreement alone is not improper pressure or inducement, provided the agreed-upon sentence is authorized by law. *Cf. Uselman v. State*, 831 N.W.2d 690, 693 (Minn. App. 2013) ("A guilty plea is involuntary when it rests in any significant degree on an unfulfilled or unfulfillable promise, including a promise of a sentence unauthorized by law." (quotations omitted)). In sum, Maddox has not met his burden to show that his guilty plea was entered in response to improper pressures or inducements or was otherwise involuntary.

As support for his argument, Maddox argues that by refusing to allow hybrid representation, the district court violated his constitutional rights to the assistance of counsel and to proceed without counsel. In the alternative, Maddox argues that the district court abused its discretion by refusing to consider his pro se motions. Essentially,

Maddox urges us to review the merits of district court's rulings on those legal issues. For the reasons that follow, we decline to do so.

In general, "[a] guilty plea by a counseled defendant operates as a waiver of all nonjurisdictional defects arising prior to the entry of the plea." *State v. Johnson*, 422 N.W.2d 14, 16 (Minn. App. 1988), *review denied* (Minn. May 16, 1988); *see also Korman v. State*, 262 N.W.2d 161, 161 (Minn. 1977) ("The other issues, relating to the deprivation of the right to counsel at the initial appearance in municipal court and the admissibility of his confession, are both issues waived by petitioner's voluntarily, knowingly, and understandingly entered guilty plea."). Because Maddox was represented by counsel throughout the proceedings, including at the time of his valid guilty plea, the general rule applies here.

We recognize that appellate courts occasionally have considered pretrial rulings despite the defendant's entry of a counseled guilty plea when the record clearly established that the defendant was attempting to preserve the pretrial issues for appeal. *See Lothenbach*, 296 N.W.2d at 857 (noting that defendant's attorney stated that the record should reflect that the reason for plea was to conclude the case at the district court level and appeal denial of motion to suppress); *see also State v. Ford*, 397 N.W.2d 875, 878 (Minn. 1986) (stating that because the circumstances were similar to those in *Lothenbach*, the court would treat the case as it did in *Lothenbach* as an appeal from a finding of guilty based on stipulated facts). Those are not the circumstances here. At one point, Maddox proposed a "*Lothenbach* plea" to preserve appellate review of the hybrid-representation ruling, but the district court refused the proposal because the hybrid-

representation issue was not dispositive. Maddox did not raise the issue again. In fact, neither the hybrid-representation issue nor the district court's attendant rulings were mentioned at the plea hearing.

We therefore do not consider the merits of the district court's ruling that Maddox does not have a constitutional right to hybrid representation or its refusal to hear Maddox's pro se motions. Maddox waived his right to appellate review of those rulings by entering a valid, counseled guilty plea.

**Affirmed.**