STATE of Minnesota, Respondent,

v.

**Allan James BAUMANN, Appellant.**

No. A08–0331.

Court of Appeals of Minnesota.

Jan. 13, 2009.

Lori Swanson, Attorney General, St. Paul, MN, Patrick J. Ciliberto, Scott County Attorney, Michael J. Groh, Assistant County Attorney, Shakopee, MN, for respondent.

Dennis P. Moriarty, Kevin J. Wetherille, Jaspers, Moriarty & Walburg, P.A., Shakopee, MN, for appellant.

Considered and decided by PETERSON, Presiding Judge; SHUMAKER, Judge; and STAUBER, Judge.

## O P I N I O N

SHUMAKER, Judge.

Appellant challenges the district court's determination that a property manager's report of suspicious activity at appellant's apartment unit justified a dog-sniff search of the common hallway of the apartment building and the court's denial of appellant's motion to suppress marijuana found in his apartment. Because the district court did not err in its ruling, we affirm.

## FACTS

During the week before Christmas in 2006, the manager of a Shakopee apartment complex complained to Shakopee Detective John Buetow that she had suspi-

cions about a certain unit in the complex because of the high number of people coming in and out and staying for a short amount of time. At that time, Buetow was working as a narcotics investigator for the Southwest Metro Drug Task Force. He had previously been trained in narcotics investigations by the Minnesota Bureau of Criminal Apprehension and the Drug Enforcement Agency, and had participated in several narcotics investigations and searches.

Through driver's license information, Buetow verified that appellant Allan Baumann lived in the apartment unit about which the manager had complained, and Buetow discovered that the Shakopee police had had previous contacts of some sort with Baumann.

Upon this information, which Buetow later characterized as "a high volume of short term traffic," he arranged to have a narcotics-detector dog brought to the apartment building in which Baumann's unit was located. The dog's handler walked the dog along the common hallway of the interior of the building to sniff the air outside several apartment doors. When the dog sniffed outside apartment # 8, he alerted to the odor of narcotics. That was Baumann's apartment unit.

Buetow then obtained and executed a search warrant for Baumann's apartment unit and found marijuana inside. The state charged Baumann with a controlled-substance crime in the fifth degree.

Baumann moved to suppress the marijuana found in his apartment on the ground that the police lacked a reasonable, articulable suspicion to conduct a drug-detector dog search in the hallway of his apartment building. He also argued that, without a legal search in the hallway and the evidence it yielded, there was no probable cause for the issuance of a search warrant.

After a contested omnibus hearing on the suppression motion, the court denied the motion. Baumann waived his right to a jury trial and submitted the case under the *Lothenbach* procedure. *State v. Lothenbach*, 296 N.W.2d 854 (Minn.1980). The court found him guilty, and he brought this appeal challenging the court's denial of his suppression motion.

## ISSUE

An apartment-complex manager told a narcotics investigator that she had suspicions about appellant's apartment unit because of the large number of people coming in and out and staying for a short time. The police then walked a drug-detector dog along the common hallway of the apartment building and the dog signaled the presence of an odor of narcotics outside appellant's door.

Did the police have the requisite reasonable, articulable suspicion of illegal activity to justify the search of the hallway with a drug-detector dog?

## ANALYSIS

■■■ The use of a drug-detector dog in the common hallway of an apartment building to determine the presence of narcotics in an apartment unit is considered a search that implicates article I, section 10, of the Minnesota Constitution, which protects people against unreasonable searches and seizures. *State v. Davis*, 732 N.W.2d 173, 176 (Minn.2007); *State v. Carter*, 697 N.W.2d 199, 211 (Minn.2005). Even without a search warrant, the use of a dog in this way is constitutionally permissible if there exists a reasonable, articulable suspicion of illegal activity. *Davis*, 732 N.W.2d at 182.

■■ Baumann does not challenge the general proposition that a drug-detector dog may be used to search a common

hallway of an apartment building, nor does he assert that he had any heightened expectation of privacy in the common hallway. Furthermore, Baumann does not dispute the reliability of the complaining apartment manager. Rather, Baumann's contention is that the information from the apartment manager that Detective Buetow characterized as being "a high volume of short-term traffic" does not satisfy the standard of a reasonable, articulable suspicion of illegal activity. He argues that this uncorroborated, single piece of information is too general, vague, and devoid of factual reference or detail to provide the requisite basis for a reasonable suspicion of illegality. He also notes that there is a plausible, innocent explanation for the high volume of traffic because this was a week before Christmas, a time when more visits to a residence than usual might be expected.

As the challenger of the lawfulness of a dog-sniff search, Baumann carries the burden of establishing that the search violated his constitutional rights. *State v. Gail,* 713 N.W.2d 851, 859–60 (Minn.2006). For challenged pretrial orders on motions to suppress evidence, we "independently review the facts and determine, as a matter of law, whether the district court erred in suppressing—or not suppressing—the evidence." *State v. Harris,* 590 N.W.2d 90, 98 (Minn.1999). We review de novo the district court's determination that there existed a reasonable, articulable suspicion justifying the search. *State v. Britton,* 604 N.W.2d 84, 87 (Minn. 2000). In our review, we consider the totality of the circumstances pertaining to the issue, including possible innocent explanations for the alleged suspicious activity. *Davis,* 732 N.W.2d at 182.

As the Minnesota Supreme Court said in *Davis,* "[r]easonable suspicion must be based on 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'" *Id.* (quoting *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). The court also pointed out that the "requisite showing is 'not high.'" *Id.* (citing *Richards v. Wisconsin,* 520 U.S. 385, 394, 117 S.Ct. 1416, 1422, 137 L.Ed.2d 615 (1997)). To establish a reasonable suspicion, the law enforcement officer must have "'something more than an unarticulated hunch, [and] ... must be able to point to something that objectively supports the suspicion at issue.'" *Id.* (quoting *State v. Wasson,* 615 N.W.2d 316, 320 (Minn.2000)).

Caselaw thus distinguishes hunch, intuition, gut reaction, and instinctive sense—which will not suffice to meet the reasonable-suspicion standard—from objectively, externally perceived and perceivable events or circumstances, augmented by rational inferences that can be drawn therefrom. *See State v. Anderson,* 683 N.W.2d 818, 823 (Minn.2004) (stating that to be reasonable the suspicion cannot be the product of "mere whim, caprice, or idle curiosity."). Furthermore, it is not enough that the law enforcement officer claims that he had a factual basis for his suspicion. He must also be able to articulate precisely what that factual basis was.

Here, a property manager thought that the level of short-term traffic coming to and leaving from Baumann's apartment was odd and suspicious. Inferentially, the manager of an apartment complex would have some degree of duty to be concerned about the use of the property since illegal activities on the premises could be problematic for the property owner and perhaps jeopardize rentals. So, the manager reported the facts she observed to a narcotics investigator. Although neither the manager nor Detective Buetow determined how many people would constitute a "high

amount" or a "high volume," or what length of time amounted to "short term" or a "short amount of time," these characterizations were expressions of activities and circumstances the manager actually observed. From those reported facts, Detective Buetow, a trained narcotics investigator, drew an inference that there might be illegal drug activity occurring in the Baumann apartment, and he arranged to confirm the inference through a dog-sniff search.

Acknowledging, as we must, the low threshold the courts have set for reasonable suspicion, we conclude that the information Detective Buetow relied upon as the basis for his suspicion was "something more" than an unarticulated hunch and that he was able to point to "something" that "objectively" supported his suspicion. *See Davis,* 732 N.W.2d at 182.

This case is analogous to *Davis,* which also involved a dog-sniff search of a common hallway. There were two items of information provided to the police in *Davis,* both from an apartment-complex employee. *Id.* at 175. The first was a hearsay report of a belief by maintenance workers that they had observed marijuana-growing lights in Davis's apartment. *Id.* There was no evidence of the details of that observation and no indication that the hearsay declarants even knew what marijuana-growing lights were or that they actually saw marijuana in the apartment. There was not any specific description of the lights from which an assessment of the probable accuracy of the report could be made. *Id.*

The second item was also a hearsay report that Davis would not allow maintenance workers to come into his apartment to investigate a water leak. *Id.* There were no details as to the time of day the maintenance workers came to the apartment, what Davis might have been doing

at the time, whether they had given prior notice that they were coming, or whether it was convenient for him to allow entry at that time. *Id.*

Like the instant case, there was a paucity of detail the informant provided to the police in *Davis,* and the information given did not rule out mistake as to what the workers observed inside the apartment or an innocent explanation for Davis's refusal to allow their admission at the time they requested it. Yet the supreme court held that the reasonable-suspicion standard was satisfied: "The two facts reported by the apartment complex employee gave police something more than an unarticulated hunch. It was reasonable for police to infer from these facts that Davis might be growing marijuana in his apartment." *Davis,* 732 N.W.2d at 183.

We are unable to distinguish the instant case from *Davis,* which we find controlling. Furthermore, it is not the design of our holding to expand upon, alter, or reinterpret *Davis.* Rather, as the court did in *Davis,* we recognize that the apartment complex resident's expectation of privacy in the common hallway was minimal and that the use of a dog to sniff that common area was minimally intrusive. *Id.* at 181. Thus, in the interests of effective law enforcement, the slight intrusion upon Bauman's privacy interests was reasonable.

Finally, because the dog-sniff search was legal, its result provided probable cause for the search warrant. Bauman's challenge is directed only to the legality of the dog sniff. He claims only that, absent the dog-sniff evidence, there was no probable cause.

## DECISION

The district court did not err in ruling that the apartment manager's report of a high amount of short-term traffic at the

appellant's apartment unit, together with the inference to be drawn from those facts, satisfied the "reasonable, articulable suspicion" standard justifying a dog-sniff search of the common hallway in the building in which the appellant's apartment unit was located.

**Affirmed.**

STAUBER, Judge, concurring specially.

I agree with the result reached by the majority. But I write separately to emphasize that the issue of whether there were "specific and articulable facts" for the dog sniff, or whether the police were acting on an "unarticulated hunch," is very close. The only "specific articulable facts" supporting the application for the search warrant were (1) the property manager's statement that there was a high volume of short term traffic at apartment 8; and (2) the dog's reaction to sniffing the air space immediately outside of *several* apartment doors, including apartment 8. Good police work requires police to carefully review, analyze, and follow up on tips and information of reported suspicious activity to determine whether, objectively, the information constitutes an articulable reason to order a dog-sniff. Hopefully, our decision will not be seen by police as yet a further expansion of dog-sniff searches over constitutionally protected privacy expectations.