*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A14-0466**

State of Minnesota,
Respondent,

vs.

Todd Timothy Clark,
Appellant.

**Filed December 29, 2014**
**Affirmed**
**Hooten, Judge**

Douglas County District Court
File No. 21-CR-12-779

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Chad M. Larson, Douglas County Attorney, Alexandria, Minnesota (for respondent)

Jade M. Rosenfeldt, Lisa N. Borgen, Vogel Law Firm, Moorhead, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Smith, Judge; and Klaphake, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

UNPUBLISHED OPINION

**HOOTEN**, Judge

On appeal from his conviction for second-degree possession of a controlled substance, appellant argues that (1) the canine sniff leading to the discovery of methamphetamine in his vehicle was unsupported by a reasonable, articulable suspicion of criminal activity; (2) the district court erred by denying his motion to withdraw his agreement to a stipulated-facts trial under Minn. R. Crim. P. 26.01, subd. 4; and (3) the district court erred in denying his motion to reopen the omnibus hearing. We affirm.

**FACTS**

Around 10:30 a.m. on May 6, 2012, Minnesota State Patrol trooper Scott Ras was dispatched to the Burgen Lake rest stop on I-94 in response to a report from the rest-stop custodian that, around 8:00 a.m., a male individual parked his vehicle in an unusual position at the rest stop, entered the nearby woods with a saw or sword, and had not yet returned. Trooper Ras arrived at the rest stop and encountered a vehicle parked diagonally across two parking spots. The doors of the vehicle were locked, the windows were up, and the interior appeared to be "very messy," with food wrappers, a Minnesota road map, and a suitcase[1] all visible from the exterior.

Trooper Ras first spoke with the rest-stop custodian, who gave the trooper a description of the individual. Trooper Ras checked the registration of the vehicle and learned that the owner was appellant Todd Timothy Clark's father, a resident of Fargo,

---

[1] Officers later determined that the suitcase was labeled with a different name than that of Clark or Clark's father.

North Dakota. Trooper Ras further learned that the vehicle had been subjected to a traffic stop near Maple Grove, Minnesota at 11:00 p.m. the previous night because the vehicle was weaving in and out of the driving lane. During that traffic stop, the driver was identified as Clark. Clark had not been arrested in connection with the traffic stop.

Trooper Ras then conducted a search of the nearby woods and found tracks in the grass, but failed to locate anyone. He asked to have other officers continue canvassing the area and requested a K-9 unit to assist with the search. While waiting for assistance, Trooper Ras was informed by dispatch that Fargo police had contacted Clark's father. Trooper Ras learned that Clark's father had told a Fargo officer that Clark did not have a drug or alcohol problem, but may be depressed and would "stay[] up for long periods of time and fall[] asleep in inappropriate places."

A Douglas County sheriff's deputy eventually arrived to assist with the search, and located Clark about a half mile from the rest stop. While en route to the rest stop with his trained narcotics-detection canine, Vinny, another Douglas County sheriff's deputy, Wade Lerfald, witnessed Clark being placed into a squad car. Deputy Lerfald proceeded to the rest stop and was updated by Trooper Ras on the situation, including the information provided by Clark's father. Based on their training and experience, the officers believed that Clark's actions were consistent with the use of methamphetamine and decided to have Vinny conduct a sniff search of the vehicle. Vinny alerted while sniffing the front driver's side door, and methamphetamine was discovered in a subsequent search of the vehicle by the officers after they obtained a key for the vehicle

3

from Clark. In connection with the recovered drugs, Clark was arrested and charged with, among other things, second-degree possession of a controlled substance.

Clark moved to suppress the evidence recovered from his vehicle as a result of the dog sniff, and a contested omnibus hearing on his motion was held on December 20, 2012. The district court heard testimony from Trooper Ras, Deputy Lerfald, and Clark's father. The two officers detailed the course of events at the rest stop and Clark's father testified as to what he told Fargo police, although he denied telling police that Clark fell asleep in odd places as claimed by Trooper Ras. The district court denied the motion to suppress, concluding that based on all of the information available to Trooper Ras and Deputy Lerfald, there was a reasonable, articulable suspicion of criminal behavior to justify the dog sniff of Clark's vehicle.

The parties agreed to a stipulated-facts trial in accordance with Minn. R. Crim. P. 26.01, subd. 4, which was held on September 10, 2013. After reviewing the evidence stipulated to by Clark, the district court found Clark guilty of second-degree possession of a controlled substance and not guilty of two other fifth-degree drug-possession charges. Prior to sentencing, Clark obtained new counsel and filed a motion to withdraw his consent to the stipulated-facts trial and reopen the omnibus hearing. He claimed that a Fargo police report, which had been in the possession of his former counsel, proved that the officers at the rest stop could not have learned the information communicated by Clark's father to Fargo police prior to conducting the sniff search of Clark's vehicle. The district court denied the motion, concluding that Clark had waived his right to withdraw his jury-trial waiver, that his waiver was knowing and voluntary, that the evidence was

4

not "newly discovered" under Minn. R. Crim. P. 26.04, subd. 1(1), and that reopening the omnibus hearing was not warranted. Clark was subsequently sentenced to a stayed prison sentence, six months in jail, and 25 years of probation. This appeal followed.

**D E C I S I O N**

**I.**

Clark argues that the district court erred in finding a reasonable suspicion of criminal activity and failing to suppress the evidence recovered by police in connection with the dog sniff of his vehicle. In reviewing the district court's pretrial order on a motion to suppress, we review its factual findings for clear error and then review its legal determinations, including the finding of a reasonable, articulable suspicion of criminal behavior, de novo. *State v. Milton*, 821 N.W.2d 789, 798 (Minn. 2012).

The United States and Minnesota constitutions protect all individuals from "unreasonable searches and seizures" by the government. U.S. Const. amend. IV; Minn. Const. art. 1, § 10. Under federal law, a dog sniff of a vehicle is generally not considered a "search" for Fourth Amendment purposes. *See Illinois v. Caballes*, 543 U.S. 405, 409, 125 S. Ct. 834, 838 (2005). But our supreme court has held that a dog sniff of a stopped vehicle requires police to have a "reasonable, articulable suspicion of drug-related criminal activity" before the sniff can be conducted. *State v. Wiegand*, 645 N.W.2d 125, 135 (Minn. 2002). The parties agree that the dog sniff of Clark's parked car is governed by the reasonable-suspicion standard laid out in *Wiegand*, but dispute whether the totality of the circumstances present in this case are sufficient to show that the officers at the scene had a reasonable, articulable suspicion that Clark's vehicle contained drugs.

5

"Reasonable suspicion must be based on 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant th[e] intrusion'" upon a defendant's person or property. *State v. Davis*, 732 N.W.2d 173, 182 (Minn. 2007) (quoting *Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968)). It is an "objective, totality-of-the-circumstances test," which asks "whether the facts available to the officer at the moment of the [search would] warrant a man of reasonable caution in the belief that the action taken was appropriate." *State v. Smith*, 814 N.W.2d 346, 351–52 (Minn. 2012) (quotations omitted). This includes consideration of "possible innocent explanations for the alleged suspicious activity." *State v. Baumann*, 759 N.W.2d 237, 240 (Minn. App. 2009), *review denied* (Minn. Mar. 31, 2009). But even "wholly lawful conduct might justify the suspicion that criminal activity is afoot" in some circumstances. *State v. Martinson*, 581 N.W.2d 846, 852 (Minn. 1998) (quotation omitted).

While the needed showing for reasonable suspicion is "not high" and "less demanding than [that for] probable cause or a preponderance of the evidence," *State v. Diede*, 795 N.W.2d 836, 843 (Minn. 2011) (quotations omitted), police may not use dog sniffs "at random and without reason," *State v. Carter*, 697 N.W.2d 199, 211 (Minn. 2005) (quotation omitted); *see also Wiegand*, 645 N.W.2d at 134 ("[T]he officer may not be motivated by mere whim, caprice, or idle curiosity." (quotation omitted)). An officer must articulate the "factual basis for his suspicion," and merely claiming to have such a basis is insufficient. *Baumann*, 759 N.W.2d at 240. However, "'by virtue of the special training they receive, police officers articulating a reasonable suspicion may make

inferences and deductions that might well elude an untrained person.'" *Smith*, 814 N.W.2d at 352 (quoting *State v. Flowers*, 734 N.W.2d 239, 251–52 (Minn. 2007)).

Here, the district court found that the state had presented sufficient facts to show that the officers had a reasonable, articulable suspicion of drug-related activity. The district court cited several circumstances as the basis for its finding. It relied on information learned by the officers while at the scene, including the abnormal manner in which Clark's vehicle was parked, the report of the rest-stop custodian that Clark had disappeared into the woods with a saw or sword hours earlier, and the officers' observations of the "very messy" interior of Clark's vehicle, which included food wrappers, open maps, and luggage that did not appear to be the property of Clark or Clark's father. The district court further cited the information given to the officers by dispatch, including the fact that Clark had been pulled over for poor driving the night before, and the information from Clark's father that Clark was depressed and had "very unusual sleeping patterns." Because the officers indicated that, based on their training and experience, these circumstances were consistent with methamphetamine use, the district court found the circumstances sufficient to justify a reasonable suspicion of drug-related activity and the resulting dog sniff.

Clark argues that these facts are insufficient to have created a reasonable suspicion of drug-related activity. He contends that these circumstances do not "allow for an inference of drug activity," especially the specific inference of methamphetamine use, and that the officers "acted on . . . a hunch while they had idle time to observe the car until [Clark] returned." He believes the district court overlooked innocent explanations

7

for these circumstances. The state contends that the "abnormalities" present here were more than enough to raise a reasonable suspicion of officers trained in narcotics detection, especially in light of cases like *Baumann* where a single suspicious fact was sufficient to meet the reasonable-suspicion threshold. *See* 759 N.W.2d at 240–41.

Taken individually, the facts articulated by the officers and relied upon by the district court in finding reasonable suspicion did not overtly indicate criminal activity. However, the officers in this case, particularly Deputy Lerfald, had "special training" allowing them to "make inferences and deductions that might well elude an untrained person." *Smith*, 814 N.W.2d at 352 (quotation omitted). We have held before that reports of seemingly innocent activity, even without direct observation of the defendant by officers, can lead to inferences of criminal activity justifying reasonable suspicion. This court in *Baumann* upheld an apartment hallway dog sniff based solely on the apartment manager's report that defendant had a high volume of short-term traffic to and from his apartment. 759 N.W.2d at 240–41. We held that because this facially innocent fact gave the police detective "something more than an unarticulated hunch," the "low threshold" of reasonable suspicion was met. *Id.* at 240 (quoting *Davis*, 732 N.W.2d at 182). When we have found a lack of reasonable suspicion in connection with a dog sniff, it has been because an officer noted suspicious behavior but failed to relate that behavior to drug-related activity, *Wiegand*, 645 N.W.2d at 137, or the officers' testimony was discredited by the district court due to inconsistencies showing that the dog sniff was "predetermined" and not based on articulable facts, *State v. Miller*, 659 N.W.2d 275, 279–80 (Minn. App. 2003), *review denied* (Minn. July 15, 2003).

Here, there were several facts noted by the officers in support of their determination of reasonable suspicion. While each fact on its own may not be enough to support a reasonable suspicion of drug-related activity, we are directed to examine these circumstances under an "objective, totality-of-the-circumstances" analysis. *Smith*, 814 N.W.2d at 351. The district court credited the testimony of both officers that, given these circumstances and their police training, they inferred that Clark was a methamphetamine user. This was more than an unarticulated hunch; Trooper Ras testified that Clark's sleeping habits were consistent with those of a methamphetamine user, and Deputy Lerfald testified that all the odd circumstances, including the poorly parked vehicle with a "very messy" interior and Clark's reported erratic behavior, led him to also conclude that Clark was using methamphetamine. The officers were able to provide numerous "historical facts" that "viewed from the standpoint of an objectively reasonable police officer, amount[ed] to reasonable suspicion" that Clark was in possession of methamphetamine. *See Martinson*, 581 N.W.2d at 850 (quotation omitted). Therefore, the district court did not err in denying Clark's motion to suppress evidence resulting from the dog sniff because the sniff was supported by a reasonable, articulable suspicion of drug-related activity.

## II.

Clark argues that the district court erred in denying his motion to withdraw his agreement to a stipulated-facts trial under Minn. R. Crim. P. 26.01, subd. 4. He claims that a Fargo police report indicates that Trooper Ras and Deputy Lerfald could not have learned the information provided to Fargo police by Clark's father prior to the dog sniff.

9

Clark asserts that while his prior attorney was in possession of this report, Clark was only apprised of its existence after obtaining new counsel.[2]

As a preliminary matter, Clark is not entitled to have the merits of his withdrawal claim considered by this court. As noted by the district court, while a defendant can withdraw a jury-trial waiver "at any time before commencement of the trial," the defendant's right to withdraw the waiver becomes unavailable after the stipulated-facts trial has been held. *State v. Johnson*, 689 N.W.2d 247, 253 (Minn. App. 2004) (quoting Minn. R. Crim. P. 26.01, subd. 1(3) (2004)). In this case, Clark did not file his motion to withdraw his agreement to the stipulated-facts trial until after the trial had concluded and the district court had found him guilty. Therefore, Clark waived his right to withdraw the stipulated-facts trial agreement.

Even if the merits of Clark's withdrawal claim are considered, the district court did not err in determining that his jury-trial waiver was knowing and voluntary. In moving to withdraw a waiver of jury-trial rights, a defendant "must establish that the agreement was not made knowingly and voluntarily." *State v. Prax*, 686 N.W.2d 45, 49 (Minn. App. 2004), *review denied* (Minn. Dec. 14, 2004). By contending that he was entitled to withdraw his jury-trial waiver, Clark was in essence moving the district court for a new trial, and therefore we review the district court's denial of Clark's motion for an abuse of discretion. *See State v. Hawes*, 801 N.W.2d 659, 676 (Minn. 2011).

---

[2] Clark's arguments could also be construed as an ineffective assistance of counsel claim. However, the effectiveness of Clark's prior counsel was not litigated below, and we will not analyze that issue on appeal. *See Roby v. State*, 547 N.W.2d 354, 357 (Minn. 1996).

The record establishes that Clark waived his right to a jury trial after consulting with his prior counsel and expressly stipulated to the evidence introduced by the prosecution. While Clark asserts that the existence of the Fargo police report meant his waiver was not made knowingly, the report was in the possession of his counsel throughout the proceedings. Further, the district court found that the Fargo police report's potential exculpatory value was "purely speculative," as the report did not clearly establish at what time the information from Clark's father was relayed to the officers at the rest stop. Because Clark's counsel had the document and its exculpatory value is questionable at best, there is sufficient evidence supporting the district court's decision. The district court did not abuse its discretion in denying Clark's motion to withdraw his rule 26.01, subd. 4, waiver and stipulation.

Furthermore, to the extent that Clark is contending that this evidence necessitates a new trial, his argument fails. Minn. R. Crim. P. 26.04, subd. 1(1) allows the district court to grant a new trial on the grounds of "[n]ewly discovered material evidence, which with reasonable diligence could not have been found and produced at trial." A defendant is required to prove "that the evidence was not known to the defendant or his/her counsel at the time of the trial" in order to receive a new trial upon a postverdict motion. *Rainer v. State*, 566 N.W.2d 692, 695 (Minn. 1997). It is undisputed that Clark's prior counsel had this report in his possession prior to the stipulated-facts trial. Therefore, the district court did not err in finding that Clark had not met his burden of proof in moving to vacate his guilty verdict.

## III.

Clark argues that the district court also erred in denying his motion to reopen the omnibus hearing due to his discovery of the Fargo police report. We review the district court's decision for an abuse of discretion. *State v. Papadakis*, 643 N.W.2d 349, 356–57 (Minn. App. 2002). While not explicitly authorized by the rules of criminal procedure, district courts have the inherent authority to grant a party's motion to reopen or reconsider omnibus rulings. *See id.* (citing *State v. Montjoy*, 366 N.W.2d 103, 107–08 (Minn. 1985)). The purpose of a motion to reopen omnibus proceedings is to "spar[e] everyone the time, trouble, and expense of an appeal" by having pretrial issues clarified and reconsidered "in a timely fashion." *See Montjoy*, 366 N.W.2d at 107–08. Accordingly, district courts have used this inherent authority *before* trial occurred. *See, e.g.*, *State v. Farah*, ___ N.W.2d ___, ___, 2014 WL 4798944, at *4 (Minn. App. Sept. 29, 2014); *Montjoy*, 366 N.W.2d at 107. Here, Clark's new counsel moved to reopen omnibus proceedings on December 17, 2013, after Clark had already been convicted and over 10 months after the district court issued its order denying his motion to suppress following the omnibus hearing. Clark's motion was therefore untimely and could not have been considered by the district court.

Notwithstanding the untimeliness of the motion, the district court acted within its discretion in declining to reopen the omnibus hearing. The district court concluded that reopening the omnibus hearing in this circumstance "would not save the time and cost of an appeal," as Clark had already been convicted. The district court reasoned that reopening the omnibus hearing would require vacation of the conviction, and the

defendant could face all four of the charged offenses again at a new trial. Further, the district court doubted the effect that the new evidence would have on its initial omnibus ruling. The district court gave thorough consideration to the issue and did not err in denying Clark's motion to reopen the omnibus hearing.

**Affirmed.**