*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1552**

State of Minnesota,
Respondent,

vs.

Alondre Ramone Davis,
Appellant.

**Filed June 29, 2015
Affirmed
Reilly, Judge**

Hennepin County District Court
File No. 27-CR-13-41225

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Lee W. Barry, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Mary F. Moriarty, Hennepin County Public Defender, Paul J. Maravigli, Assistant Public Defender, Minneapolis, Minnesota (for appellant)

        Considered and decided by Halbrooks, Presiding Judge; Reilly, Judge; and Willis,

Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**REILLY**, Judge

On appeal from his conviction of being an ineligible person in possession of a firearm, appellant Alondre Davis argues that the district court erred by denying his suppression motion because the evidence was obtained as the result of an unconstitutional search of his residence.  We affirm.

## FACTS

On December 12, 2013, Plymouth police officer R. Topp applied for a warrant to search apartment 121, located at 10000 45th Avenue North in Plymouth, Minnesota.  The warrant application and supporting affidavit included information that Sergeant Topp had a "working relationship with the management staff at Shadow Hills Estates apartment complex."  According to the affidavit, Sergeant Topp received information about "possible illegal narcotic activities" stemming from complaints made by "surrounding neighbors of apartment #121" to the management staff regarding the smell of marijuana originating at apartment 121 and "high levels of short term traffic occurring at [apartment 121]."  Based on this information, Sergeant Topp requested a canine unit to conduct a narcotics sniff.  After sniffing the hallway, the dog gave a positive alert for the presence of narcotics at apartment 121.

On December 16, 2013, officers executed the search warrant and found 528.94 grams of suspected MDMA (ecstasy) and a 9mm handgun.  The MDMA tested positive for methylone, a Schedule I controlled substance.  The state charged appellant with two

first-degree controlled-substance crimes and being an ineligible person in possession of a firearm.

Appellant moved the district court to suppress the evidence obtained in the search and demanded a hearing to determine whether probable cause supported the warrant and whether probable cause existed for the dog sniff. Appellant claimed that because the search warrant's supporting affidavit alleged that the dog sniff took place on July 15, 2013, the information supporting the warrant was stale, and probable cause did not support the dog sniff.

On April 28, 2014, the district court held a *Rasmussen* hearing. At this hearing, appellant also raised a *Franks* issue.[1] K.F., the property manager at Shadow Hills Apartments, testified. K.F. explained that when apartment management receives complaints concerning illegal drug activity, it is usually on weekends or evenings and involves a resident "smell[ing] marijuana in the hallway." K.F. informed Sergeant Topp that management received complaints regarding marijuana smells on the first and third floors of the 10000 apartment building in the wing where apartment 121 is located.

I.M., a leasing consultant at Shadow Hills Apartments, also testified. I.M. testified that she spoke with Sergeant Topp approximately two months earlier. She stated that she had not received complaints "specifically [about apartment 121] but [had about] that

---

[1] *See Franks v. Delaware*, 438 U.S. 154, 155-56, 98 S. Ct. 2674, 2676 (1978) (permitting an evidentiary hearing to challenge the validity of a search-warrant affidavit upon allegations of deliberate falsehood or of reckless disregard for the truth accompanied by an offer of proof).

building and the first floor hallway." The state did not present any witnesses and informed the court that the July 15, 2013 date was a typographical error.

The district court denied the suppression motion. Appellant waived his right to a jury trial and agreed to a stipulated-facts trial under Minn. R. Crim. P. 26.01, subds. 3, 4. The district court found appellant guilty of being an ineligible person in possession of a firearm and committed appellant to the commissioner of corrections for 72 months.[2]

Appellant appeals.

## D E C I S I O N

### I.

Appellant challenges the district court's conclusion that the warrant authorizing the search of his residence was supported by probable cause. The United States and Minnesota Constitutions protect citizens from unreasonable searches and seizures, providing that no warrant shall be issued without a showing of probable cause. U.S. Const. amend. IV; Minn. Const. art. I, § 10. Probable cause exists if there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Wiley*, 366 N.W.2d 265, 268 (Minn. 1985) (quotation omitted).

Generally, a search is lawful only if it is executed pursuant to a valid search warrant issued by a neutral and detached judge based on a finding of probable cause. *See* Minn. Stat. § 626.08 (2012); *State v. Harris*, 589 N.W.2d 782, 787 (Minn. 1999). An issuing judge "is entitled to draw common-sense and reasonable inferences from the facts

---

[2] The parties, by agreement, only submitted the charge of being an ineligible person in possession of a firearm for consideration.

4

and circumstances given." *State v. Holiday*, 749 N.W.2d 833, 843 (Minn. App. 2008) (quotation omitted). "When determining whether a search warrant is supported by probable cause, we do not engage in a de novo review." *State v. McGrath*, 706 N.W.2d 532, 539 (Minn. App. 2005), *review denied* (Minn. Feb. 22, 2006).

When a warrant is issued, this court's review "is limited to ensuring that the issuing judge had a substantial basis for concluding that probable cause existed." *Harris*, 589 N.W.2d at 788 (quotations omitted). A search-warrant application has a substantial basis when there is a "fair probability that contraband or evidence of a crime will be found in a particular place." *State v. Zanter*, 535 N.W.2d 624, 633 (Minn. 1995) (quotation omitted). A reviewing court gives "great deference" to the issuing judge's probable-cause determination. *State v. Rochefort*, 631 N.W.2d 802, 804 (Minn. 2001). "To avoid discouraging police from seeking review by a neutral and detached magistrate, doubtful or marginal cases are resolved in favor of upholding the warrant." *State v. Ruoho*, 685 N.W.2d 451, 456 (Minn. App. 2004), *review denied* (Minn. Nov. 16, 2004).

Appellant first argues that the information supporting the warrant was stale because the warrant application was made in December 2013 and the supporting affidavit cites a "07-15-2013" dog sniff for support. Appellant claims that this five-month lapse between the dog sniff and application made the information supporting the warrant stale and the dog sniff should not have been considered in the probable-cause determination.

A positive result from a dog sniff can provide the probable cause for a search warrant. *State v. Baumann*, 759 N.W.2d 237, 241 (Minn. App. 2009), *review denied* (Minn. Mar. 31, 2009). The language at issue in the supporting affidavit states in part:

> *Within the last 24 hours*, your affiant asked that Officer Gliniany of the Plymouth Police Department deploy his U.S.P.C.A certified K9 partner Stryker to conduct a narcotics sniff of the aforementioned apartment. *On 07-15-2013*, your affiant was advised by Officer Gliniany that his K9 partner had been deployed at 10000 45th Ave. N., had sniffed several apartments before #121 as well as several apartments after #121 and only gave a positive alert for the presence of illegal narcotic odors at apartment #121.

(Emphasis added.) The district court found that the July 15, 2013 date was a "typographical error, and that the positive alert occurred within the past 24 hours before Sgt. Topp applied for the warrant." Appellant claims that the district court erred by going beyond the four corners of the affidavit and discounting the "clear and unambiguous" language of the warrant affidavit when it concluded that the July 2013 date was a typographical error.

Generally, "[i]n determining whether probable cause exists, both the district court and the reviewing court may consider only the information in the application for the search warrant." *State v. Secord*, 614 N.W.2d 227, 229 (Minn. App. 2000), *review denied* (Minn. Sept. 13, 2000). But if a defendant challenges the accuracy of the material facts in a facially valid search-warrant application, the district court is permitted to look beyond the four corners of the warrant application. *State v. Luciow*, 308 Minn. 6, 6-7, 240 N.W.2d 833, 835 (1976).

When asked about the July date at the *Rasmussen* hearing, the state informed the district court that:

> We addressed that in our briefs. That was a typographical error and it's clear from the police reports that Mr. Deckenbach [appellant's lawyer] actually has his hands

6

on where the canine officer indicated that the sniff had occurred on 12/12/13 and that the dog had indicated on the apartment door 121, so it was a typographical error and we addressed that in our brief. And Mr. Deckenbach is fully aware that that dog sniff did not occur in July. The report that he has is from December 12, 2013. It's a typographical error. That's simply what it is and our brief addressed the fact that it was and provided Mr. Deckenbach, I think as well as the Court, a copy of the police report from the canine officer indicating that it occurred in December and not July.

The state explained that it would not have Sergeant Topp testify because:

There's nothing more that he can add. You have his affidavit for his search warrant. You've heard the testimony of these two women. So I think at this point it would just be a matter of you making your decision as to number one, whether there was probable cause, and we briefed that. That was based on the search warrant. And whether or not the dog sniff, there was a reasonable suspicion for the dog sniff. That's been briefed.

And obviously if you find that there's a material misrepresentation in the search warrant and even disregarding the misrepresentation, if there's still sufficient probable cause in the search warrant. My officer is not going to be able to add to that. It's simply looking at the search warrant under those three separate issues.

In arguing that the district court erroneously discounted the July 2013 date, appellant relies on a Texas case, *Green v. State*, 799 S.W.2d 756 (Tex. Crim. App. 1990), and a Maryland case, *Greenstreet v. State*, 898 A.2d 961 (Md. 2006), for support. Neither case is persuasive. At issue in *Green* was a search warrant that was executed on March 25, 1987, but was issued by the magistrate on March 20, 1987. 799 S.W.2d at 757. At the time, Texas law required that a search warrant be executed within three days of its issuance. *Id.* The state maintained that the March 20 date was a clerical error. *Id.*

at 758. In deciding whether the search warrant was stale, the *Green* court noted that a document's validity can be decided by "pointing to the existence of testimony in the record which explains the discrepancy in light of the circumstances surrounding issuance and execution." *Id.* at 759. Ultimately, in determining that the defendant's suppression motion should have been granted, the *Green* court concluded that the "total lack of evidence corroborating the State's contention of clerical error" made the warrant stale. *Id.* at 761.

In *Greenstreet*, the affidavit submitted in support of the search warrant listed a trash seizure as occurring almost a year before the warrant application. 898 A.2d at 964-65. In reversing the Maryland Court of Special Appeals, the *Greenstreet* court concluded that there was not enough internal and direct evidence that existed in the affidavit from which the issuing judge could have inferred a "clear mistake of a material date." *Id.* at 973-74. Specifically, in response to the lower court's reliance on other cases that have upheld warrants with typographical errors, the *Greenstreet* court stated: "We distinguish the present case from the facts of the aforementioned cases because, in the affidavit at issue here, the 14 April 2003 date of the trash seizure was not contradicted by any other date or precise and specific direct fact in the affidavit." *Id.* at 973.

Here, unlike *Green* and *Greenstreet*, there was an additional time period referred to in the affidavit that satisfies the warrant requirements. In reviewing the totality of the circumstances, a commonsense reading of the warrant application supports the reasonable inference that the July 2013 date was an internal inconsistency and not the actual date of the dog sniff. Accordingly, the district court did not err in concluding that the

information in the warrant affidavit was not stale and probable cause existed to search apartment 121.

## II.

Appellant next argues that since the dog sniff was stale, the warrant lacked probable cause because the statements in the warrant affidavit about reports of drug activity by apartment management were false or made with reckless disregard for the truth. Although the positive alert from the dog sniff satisfies the warrant's probable-cause requirement, we will address appellant's argument regarding management's statements to the extent that they provided the reasonable suspicion for the dog sniff. "Although a presumption of validity attaches to a search-warrant affidavit, this presumption is overcome when the affidavit is shown to be the product of deliberate falsehood or reckless disregard for the truth." *McGrath*, 706 N.W.2d at 540.

When challenging the validity of a warrant, a defendant must satisfy the two-prong *Franks* test: "(1) the affiant deliberately made a statement that was false or in reckless disregard of the truth, and (2) the statement was material to the probable cause determination." *State v. Andersen*, 784 N.W.2d 320, 327 (Minn. 2010) (quotations omitted). A statement is material if "when the misrepresentation is set aside or the omission supplied, probable cause to issue the search warrant no longer exists." *Id.* This court reviews the district court's finding on the issue of whether the affiant deliberately made statements that were false or in reckless disregard for the truth under a clearly erroneous standard. *Id.* And we review whether the statements were material to the probable-cause determination de novo. *Id.*

Specifically appellant challenges the fact that the apartment employees' testimony did not focus on a single apartment but instead was general to the entire third and first floors. The district court determined that information in the warrant affidavit did

> not constitute a material misrepresentation . . . because . . . the witnesses [stated] . . . that the smells were emanating from the first floor on the particular wing where it happens that apartment 121 was located, that information would have justified a dog sniff for the entire hallway, whether or not they focused in on apartment 121, which the dog did.
>
> . . . But the difference between the more specific search warrant and the more general information that the witnesses talked about is not material because they could have justified a search of the hallway using either set of information.

As to the *Franks* issue, the district court found that "the more detailed information in the search warrant application is not a material misrepresentation because the testimony of [I.M. and K.F.] would have been broad enough to provide reasonable suspicion to support a dog sniff for the whole wing of the 10000 building." Although the district court did not directly address whether the statements in the warrant affidavit were false or made with reckless disregard of the truth, the district court found that any alleged misrepresentations in the warrant application were not material. We agree.

In *State v. Baumann*, this court held that law enforcement had reasonable suspicion to justify use of a drug-detector dog to search the common hallway of an apartment building when a manager reported "a high volume of short-term traffic." 759 N.W.2d at 239-41. Relying on the "low threshold the courts have set for reasonable

suspicion," this court concluded that the information reported by the manager was enough to satisfy the reasonable-suspicion standard. *Id.* at 241.

Here, when Sergeant Topp spoke with K.F., she told him "that we've gotten several complaints of people smelling marijuana in [building 10000], that we've never really detected it ourselves but that we've gotten several phone calls." K.F. also testified that a resident had previously reported high levels of short-term traffic in the 10000 building.

I.M. testified that she remembered meeting with a police officer and the officer was investigating apartment 121 in the 10000 building. I.M. further testified that she had not received complaints specifically about apartment 121 but had received complaints about "building [10000] and the first floor hallway" and could not recall receiving complaints about the third floor.

Even though K.F. testified that the complaints were not specific to apartment 121, she did testify that marijuana smells were reported on the first floor of the 10000 building in the wing where apartment 121 was located. Sergeant Topp was informed of the marijuana smells on the first floor of building 10000 and of the high volume of short-term traffic in the building. These more general statements provide sufficient reasonable suspicion for the dog sniff. *See State v. Davis*, 732 N.W.2d 173, 182 (Minn. 2007) (concluding that an officer must have reasonable articulable suspicion that a suspect is engaged in illegal activity to justify a warrantless dog sniff in a common hallway). And the district court did not err by determining that the alleged misrepresentations were not material. *See Andersen*, 784 N.W.2d at 329 (declining to determine whether the alleged

11

misrepresentations or omissions were deliberate or reckless after concluding that the statements were not material).  Accordingly, reasonable suspicion existed to support the dog sniff in the hallway of apartment 121.

**Affirmed.**